# EXHIBIT 1

Clear All Data

# COVER SHEET FOR FILING CIVIL ACTIONS

COMMONWEALTH OF VIRGINIA

Case No. 2025 14443
(CLERK'S OFFICE USE ONLY)

Fairfax County Circuit Court ........ Circuit Court

Jaison Francisco / Shenette Francisco ........ v./In re: Tastytrade, Inc.
PLAINTIFF(S) DEFENDANT(S)

I, the undersigned [✓] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [✓] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [✓] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [✓] Other General Tort Liability

## ADMINISTRATIVE LAW
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS
- [ ] Amend Birth/Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify)

[✓] Damages in the amount of $ $2,634,702.96 (VCPA) *+ Disgorgement + Punitive Damage + Emotional Distress Damage* are claimed.

August 30, 2025
DATE

[✓] PLAINTIFF [ ] DEFENDANT [ ] ATTORNEY FOR [ ] PLAINTIFF [ ] DEFENDANT

Jaison Francisco / Shenette Francisco
PRINT NAME

6850 Richmond Hwy, Apt 507, Alexandria, VA 22306 / 571-355-2314
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

jaison2@yahoo.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

# Civil Action Type Codes
## (Clerk's Office Use Only)

Accounting .......... ACCT
Adoption .......... ADOP
Adoption – Foreign .......... FORA
Adult Protection .......... PROT
Aid and Guidance .......... AID
Amend Birth/Death Certificate .......... AVR
Annexation .......... ANEX
Annulment .......... ANUL
Annulment – Counterclaim/Responsive Pleading .. ACRP
Appeal/Judicial Review
- ABC Board .......... ABC
- Board of Zoning .......... ZONE
- Compensation Board .......... ACOM
- DMV License Suspension .......... JR
- Employment Commission .......... EMP
- Employment Grievance Decision .......... GRV
- Local Government .......... GOVT
- Marine Resources .......... MAR
- School Board .......... JR
- Voter Registration .......... AVOT
- Other Administrative Appeal .......... AAPL

Appointment
- Conservator of Peace .......... COP
- Church Trustee .......... AOCT
- Custodian/Successor Custodian (UTMA) .......... UTMA
- Guardian/Conservator .......... APPT
- Marriage Celebrant .......... ROMC

Approval of Transfer of Structured Settlement .......... SS
Asbestos Litigation .......... AL
Attachment .......... ATT
Bond Forfeiture Appeal .......... BFA
Child Abuse and Neglect – Unfounded Complaint .. CAN
Civil Contempt .......... CCON
Claim Impleading Third Party Defendant – Monetary Damages/No Monetary Damages .......... CTP
Complaint – (Miscellaneous) .......... COM
Compromise Settlement .......... COMP
Condemnation .......... COND
Confessed Judgment .......... CJ
Contract Action .......... CNTR
Contract Specific Performance .......... PERF
Counterclaim – Monetary Damages/No Monetary Damages .......... CC
Cross Claim .......... CROS
Declaratory Judgment .......... DECL
Declare Death .......... DDTH
Detinue .......... DET
Divorce
- Complaint – Contested/Uncontested .......... DIV
- Counterclaim/Responsive Pleading .......... DCRP
- Reinstatement – Custody/Visitation/Support/ Equitable Distribution .......... CVS

Driving Privileges
- Reinstatement pursuant to § 46.2-427 .......... DRIV
- Restoration – 3rd Offense .......... REST

Ejectment .......... EJET
Encumber/Sell Real Estate .......... RE
Enforce Vendor's Lien .......... VEND
Escheatment .......... ESC
Establish Boundaries .......... ESTB
Expungement .......... XPUN
Forfeiture of Property or Money .......... FORF
Freedom of Information .......... FOI
Garnishment .......... GARN
Injunction .......... INJ
Intentional Tort .......... ITOR
Interdiction .......... INTD
Interpleader .......... INTP
Interrogatory .......... INTR
Judgment Lien – Bill to Enforce .......... LIEN
Landlord/Tenant .......... LT
Law Enforcement/Public Official Petition .......... LEP
Mechanics Lien .......... MECH
Medical Malpractice .......... MED
Motor Vehicle Tort .......... MV
Name Change .......... NC
Other General Tort Liability .......... GTOR
Partition .......... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) .......... PET
Product Liability .......... PROD
Quiet Title .......... QT
Referendum Elections .......... ELEC
Reinstatement (Other than divorce or driving privileges) .......... REIN
Removal of Case to Federal Court .......... REM
Restore Firearms Rights – Felony .......... RFRF
Restore Firearms Rights – Review .......... RFRR
Separate Maintenance .......... SEP
Separate Maintenance – Counterclaim/Responsive Pleading .......... SCRP
Sever Order .......... SEVR
Sex Change .......... COS
Taxes
- Correct Erroneous State/Local .......... CTAX
- Delinquent .......... DTAX

Termination of Mineral Rights .......... MIN
Trust – Impress/Declare/Create .......... TRST
Trust – Reformation .......... REFT
Uniform Foreign Country Money Judgments .......... RFCJ
Unlawful Detainer .......... UD
Vehicle Confiscation .......... VEH
Violation – Election Law .......... VEL
Voting Rights – Restoration .......... VOTE
Will Construction .......... CNST
Will Contested .......... WILL
Writs
- Certiorari .......... WC
- Habeas Corpus .......... WHC
- Mandamus .......... WM
- Prohibition .......... WP
- Quo Warranto .......... WQW

Wrongful Death .......... WD

FILED
CIVIL INTAKE
2025 SEP 26 A 8:43
CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

JAISON FRANCISCO and
SHENETTE FRANCISCO,

*Plaintiffs,*

v.

TASTYTRADE, INC.,

*Defendant.*

Case No. 2025 14443

**Serve:**
Clerk of the State Corporation Commission
Attn: Service of Process
1300 E. Main St., Tyler Building, 1st Floor
Richmond, VA 23219

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

JURY TRIAL DEMANDED

COME NOW the Plaintiffs, Jaison Francisco and Shenette Francisco ("Plaintiffs"), husband and wife, appearing initially pro se, and for their Complaint against Defendant TASTYTRADE, INC. avers and alleges as follows:

**PARTIES**

1. Plaintiff Jaison Francisco ("Plaintiff") is a resident of Alexandria, Virginia and a customer and account holder of Defendant.

2. Plaintiff Shenette Francisco ("Plaintiff's wife") is a resident of Alexandria, Virginia. She brings claims only for her physical and emotional injuries suffered as a direct result of Defendant's conduct.

3. Defendant TASTYTRADE, INC. ("Tastytrade") is an Illinois corporation registered as an introducing broker with the CFTC, with principal place of business at 1330 W. Fulton Street, Suite 600, Chicago, Illinois 60607. Tastytrade is a subsidiary of the UK-based company IG Group.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under Va. Code § 8.01-328.1 because the amount in controversy exceeds $50,000. Venue is proper in Fairfax County under Va. Code § 8.01-262, as Plaintiffs reside here and a substantial part of the events occurred here. Defendant maintains sufficient contacts with Virginia through continuous business activities directed at Plaintiffs, satisfying due process requirements.

## INTRODUCTION

5. Plaintiffs bring this lawsuit against Defendant Tastytrade, Inc., which served as the Introducing Broker for Plaintiff's trading account. Through Defendant's platform, Plaintiff accessed securities, cryptocurrency, and futures accounts.

6. By acting as the Introducing Broker, Defendant owed contractual and common law duties to safeguard Plaintiff's assets, operate within the limits of its regulatory authority, and ensure that his account was not subjected to conversion, temporary extraction of funds, fabricated debt or extreme negative balance display.

## FACTS

### *A. Bonus Induced Deposit*

7. In or before August 2023, Defendant published a promotional advertisement stating that customers who deposited $100,000 would receive a $2,000 bonus. *(Ex. C2: Bonus Advertisement)* The advertisement failed to prominently disclose any conditions, restrictions, or waiting periods attached to the offer, thereby creating the clear impression that the bonus would be provided immediately upon deposit.

8. On August 31, 2023, before depositing funds, Plaintiff emailed Defendant to confirm the bonus. Defendant's employee "Jerry" responded in writing that Plaintiff would receive the $2,000 bonus upon depositing $100,000, without mentioning any restrictions, waiting periods, or Bonus Terms provisions. *(Ex. C3: Email with Jerry)*

9. Relying on the advertisement and Jerry's confirmation, Plaintiff deposited $138,100 into his Tastytrade account on September 11, 2023. *(Ex. B1: Bank Deposit Confirmation)*

10. That same day, Plaintiff instructed Defendant in writing to maintain his account on a "no leverage" basis, identifying himself as a low-risk investor. Defendant nevertheless maintained a futures account and later offered a 4:1 leverage ratio.

11. On September 16, 2023, Defendant's employee "Stephen" gave Plaintiff unsolicited advice to employ a 4:1 futures leverage ratio. Plaintiff refused and reaffirmed his no-leverage instruction.

12. On September 22, 2023, Plaintiff emailed Defendant asking when the $2,000 bonus would be credited. *(Ex. C4: Bonus Follow-up Email)* Defendant did not respond. Months later, Defendant disclosed that the promotion required maintaining a $100,000 balance for one year, a condition buried on page 3 of the Bonus Terms *(Ex. C1: Bonus Terms & Conditions)* and never mentioned in prior communications.

13. During the administrative case, Defendant first cited these restrictions, despite Plaintiff's earlier direct inquiry in which no conditions were disclosed.

14. On February 20, 2024, Defendant's trade desk manager, Kevin Labno, admitted that the "New Account Opening Promotion" was not available to customers with a futures account. *(Ex. C6: Bonus Not Available)*

15. As a result, Plaintiff traded from September 11 through September 27, 2023 without receiving the promised $2,000 bonus, which has never been provided.

***B. Negative Balance of −$696,134.32 and Failed Market Sell Order***

16. On September 26, 2023, from approximately 11:15 p.m. to 12:20 a.m., Plaintiff lost control of his account. During this period, the account displayed a false negative balance of −$696,134.32, *(Ex. D2: False Debt Screenshot)* and system records reflected $746,397.32 was removed, consisting of Plaintiff's actual remaining balance of $50,263 and a fabricated debt of $696,134.32.

17. Plaintiff attempted multiple market sell orders of his crude oil contract position, but the platform did not execute the market sell order and no error message. The platform displayed a confirmation dialog stating the order would process, but after Plaintiff selected "Yes," the orders failed without error message. *(Ex. D3: Market Sell Order Screenshot)*

18. Plaintiff recorded contemporaneous video evidence at 11:25:51 p.m. on September 26, 2023 *(Ex. D1: Video Evidence)* , documenting the false negative balance and failed market sell orders. *(Ex. D2, D3: Video Evidence Screenshots)*

19. Plaintiff emailed Defendant's support staff during the freeze but received no response. When access was restored around 12:20 a.m. on September 27, 2023 Plaintiff's balance had been reduced to $50,263, a permanent loss of approximately $87,837.

20. Defendant claimed that the negative balance resulted from Plaintiff allowing a "session timeout," which allegedly caused the display errors. However, Plaintiff's account dashboard showed no "session timeout" error message during the incident.

***C. Human Toll***

21. After seeing the fabricated debt of −$696,134.32 and being unable to liquidate, Plaintiff and his wife left their home in distress and both experienced thoughts of self-harm while driving that night.

22. On October 6, 2023, 10 days after the negative balance incident, Plaintiff's wife was hospitalized at Inova Hospital in Alexandria, Virginia, for severe blood loss—her first confinement in over twenty years—during a period of emotional stress following the September 26, 2023 incident. Plaintiff meanwhile experienced continuing distress, difficulty concentrating at work, contacted crisis helpline, became socially withdrawn, and took over seven months of leave from employment.

23. As a result of the account freeze, false debt display, failed market sell order, and absence of the promised bonus, Plaintiffs suffered both financial and emotional harm: a permanent reduction in account value, lost income, Plaintiff's wife's hospitalization, ongoing emotional distress, social isolation, diminished enjoyment of life, and loss of trust in the financial system.

**COUNT I**
**(Breach of Contract)**

24. Plaintiff realleges and incorporates by reference paragraphs 1 through 23.

25. **Valid Contract.** The parties executed valid and enforceable agreements, including the Customer Agreement, the Futures Agreement *(Ex. A1, A2)*, and after 5 months revealed the Bonus Terms and Conditions *(Ex. C1)*, which are attached hereto and incorporated herein by reference.

26. **Performance by Plaintiff.** Plaintiff fully performed all contractual obligations by: (a) depositing $138,100 on September 11, 2023 via wire transfer from Bank of America *(Ex. B1)*; and (b) maintaining the account in good standing.

27. **Material Breaches by Tastytrade.** Defendant breached multiple contractual provisions, including:

(a) **Section 4(e) – Order Execution.** The Customer Agreement provides: "You agree to be bound by the actual order execution transacted on the listed U.S. Exchange that resulted from the entry of your order." On September 26, 2023, when Plaintiff attempted to execute a market sell order, the platform displayed a confirmation dialog but the order failed to execute without error warning. Video evidence documents this failure *(Ex. D2, D3)*.

(b) **Bonus Terms – Material Nondisclosure.** The Terms and Conditions, at page 3, require the initial minimum funding amount to remain for twelve months. This restriction was not prominently disclosed in Defendant's advertisement *(Ex. C2)* or when Plaintiff specifically inquired on August 31, 2023. Defendant's representative confirmed availability without disclosing this restriction *(Ex. C3)*. Despite Plaintiff's qualifying deposit of $138,100, the $2,000 bonus was never provided.

(c) **Section 3 – Safeguarding Duties.** Tastytrade undertook duties to safeguard client assets and operate within regulatory authority. Defendant failed to safeguard what remains of Plaintiff's $138,100 deposit when it displayed an impossible debt of $696,134.32 it subjected the account to "conversion" and "temporary extraction of funds." In the highly leveraged futures market, such temporary extraction of $746,397.32 for even an hour, minutes, or seconds can be deployed for

rapid trades that generate substantial profits, as futures positions can multiply in value within moments.

(d) **Futures Agreement – Unauthorized Account Type.** Despite Plaintiff's reliance on receiving the bonus, Tastytrade opened a futures account for Plaintiff. On February 20, 2024, Defendant's trade desk manager admitted that futures accounts were not eligible for the promotional bonus, contradicting the representations made to induce Plaintiff's deposit.

(e) **Implied Covenant of Good Faith and Fair Dealing.** Tastytrade acted in bad faith by falsely blaming Plaintiff for allegedly allowing a "session timeout" error when no such message ever appeared on his dashboard, attempting to shift responsibility for its catastrophic platform failure onto the victim rather than acknowledging the breach and remedying the harm. This fabricated excuse, contradicted by video evidence, demonstrates Tastytrade's conscious decision to avoid liability through deception rather than deal fairly with its customer.

(f) **Sections 8 and 20(iv) – Margin Requirements.** Section 8 requires payment "upon demand of any debit balance." Section 20(iv) requires Plaintiff to "promptly satisfy all margin and maintenance calls." Tastytrade issued no margin call or demand before displaying a fabricated negative balance of $696,134.32 on September 26, 2023.

28. **Damages.** As a direct and proximate result of Tastytrade's conduct, Plaintiff suffered compensatory damages of $89,837 (consist of direct account loss of $87,837 and the unprovided $2,000 promotional bonus) plus prejudgement interests.

**COUNT II**
**(Fraud In The Inducement)**

29. Plaintiff realleges and incorporates by reference paragraphs 1 through 28.

30. **False Representation of Material Fact.** In or before August 2023, Tastytrade published an advertisement promising a $2,000 bonus for deposits of $100,000 or more, without prominently disclosing material restrictions. The undisclosed restrictions included: (a) a requirement to maintain $100,000 for twelve months (buried on page 3 of separate Terms and Conditions- Ex C1); and (b)

categorical ineligibility of futures accounts for the bonus, as later admitted by Defendant's trade desk manager Kevin Labno on February 20, 2024.

31. **Knowledge of Falsity.** Tastytrade knew or should have known these representations were false or misleading when made. Evidence of scienter includes: (a) Jerry's August 31, 2023 confirmation of bonus availability while omitting all restrictions when directly asked; (b) Tastytrade's silence when Plaintiff inquired about bonus timing on September 22, 2023; (c) the $2,000 bonus was never provided despite Plaintiff's qualifying deposit of $138,100; (d) when credited only after administrative complaint on November 20, 2023, it was immediately marked as restricted and blocked from withdrawal; and (e) Kevin Labno's February 2024 admission that futures accounts were never eligible to receive the bonus, contradicting all prior representations.

32. **Intent to Induce Action.** Tastytrade made these representations to induce Plaintiff to deposit funds. Relying on the advertisement and Jerry's confirmation, Plaintiff deposited $138,100 on September 11, 2023. Tastytrade opened a futures account not letting Plaintiff know that such account were ineligible for the promoted bonus as revealed five months later by trade desk manager Kevin Labno, and ultimately never provided the $2,000 bonus.

33. **Justifiable Reliance.** Plaintiff justifiably relied on Tastytrade's representations. Before depositing funds, Plaintiff specifically inquired about bonus availability and received written confirmation from Tastytrade's authorized representative. Tastytrade did not disclose the restrictions until after Plaintiff filed an administrative complaint.

34. **Damages.** As a result of Tastytrade's fraud, Plaintiff seeks rescission of all transactions as void ab initio, compensatory damages of $89,837 (consist of direct account loss of $87,837 and the unprovided $2,000 promotional bonus) plus prejudgment interest. Because the fraud was willful and wanton, Plaintiff further seeks punitive damages under Virginia law, or, if Illinois law governs by contract, enhanced punitive damages available against an Illinois Defendant.

## COUNT III
## (Conversion)

35. Plaintiff realleges and incorporates paragraphs 1 through 34.

36. **Ownership and Right to Possession.** Plaintiff owned and had the right to immediate possession of funds totaling $138,100 deposited on September 11, 2023. By September 26, 2023, Plaintiff's account contained $50,263, all of which constituted Plaintiff's property.

37. **Wrongful Exercise of Dominion.** On September 26, 2023, from 11:15 p.m. to 12:20 a.m.—65 minutes—Tastytrade extracted $746,397.32 by seizing Plaintiff's actual balance of $50,263 and imposing a fabricated debt of $696,134.32. This extraction occurred while Plaintiff's crude oil futures positions—highly volatile and fluctuating assets—were actively trading in overnight markets. Video evidence documents Plaintiff's multiple failed attempts to execute market sell orders despite confirmation prompts appearing, proving Tastytrade's exclusive control while denying Plaintiff any access during critical price movements in the crude oil market.

38. **Intent to Deprive.** In the 23-hour crude oil futures market, 65 minutes of control over $746,397.32 provides significant opportunity to generate profits or hedge losses through leveraged positions that can multiply in value within seconds. The extraction occurred precisely when Plaintiff's fluctuating crude oil assets required active management. Tastytrade's extraction was intentional and complete upon exercise of dominion, regardless of duration.

39. **Damages.** Tastytrade's conversion caused $696,134.32 in compensatory damages, representing the diminution of account to −$696,134.32 during the 65-minute period of wrongful control. Under Virginia's highest intermediate value rule, Plaintiff is entitled to recover this maximum diminution. Alternative damage is pled in Prayer for Relief section. Plaintiff seeks these damages with prejudgment interest. Because Tastytrade's actions were willful and wanton, Plaintiff further seeks punitive damages under Virginia law, or, if Illinois law governs by contract, enhanced punitive damages available against an Illinois Defendant.

## COUNT IV
**(Fraud)**

40. Plaintiff realleges and incorporates paragraphs 1 through 39.

41. **False Representation - Bonus Not Provided.** After Plaintiff was induced to deposit his $138,100 and started trading from September 11-27, 2023, Plaintiff is expecting the bonus to be credited. When Plaintiff inquired about the missing bonus on September 22, 2023, Defendant remained silent, allowing him to continue trading under false expectations until the catastrophic false debt of $696,134.32, and funds extraction of $746,397.32 on September 26, 2023. The bonus was never provided. On February 20, 2024, Defendant's trade desk manager Kevin Labno admitted futures accounts were categorically ineligible—an unwritten policy appearing nowhere in any customer agreement.

42. **False Representation - Platform Failure.** On September 26, 2023, when Defendant's platform displayed -$696,134.32 in false debt and failed to execute Plaintiff's market sell orders (documented by video evidence), Defendant falsely blamed a "session timeout" that never appeared on Plaintiff's dashboard. This fabricated excuse concealed Defendant's catastrophic platform malfunction that displayed an impossible debt exceeding Plaintiff's deposit by 500%.

43. **Knowledge and Intent.** Defendant knew both representations were false. Defendant knew Plaintiff was actively trading September 11-27 expecting the bonus, yet remained silent when asked on September 22, 2023. Labno's February 2024 admission proves Defendant knew throughout Plaintiff's trading period no bonus would be provided. The futures exclusion from bonus was an internal policy Defendant deliberately omitted from written agreements while Jerry confirmed bonus availability without restrictions. Regarding the timeout claim, Defendant knew no timeout error existed and the -$696,134.32 display was false, yet fabricated this excuse to escape liability.

44. **Reasonable Reliance.** Plaintiff reasonably relied on Defendant's representations by: (1) depositing $138,100 based on the bonus confirmation; (2) no response on bonus inquiry on September 22, 2023 (3) continuing to trade futures for sixteen days with each decision influenced by expected bonus capital. No reasonable investor would expect an unwritten futures bonus exclusion after

consistently being promised and doubt broker's ineffective handling of software session timeout issue blamed on customers. Had Defendant disclosed the truth, Plaintiff would have ceased trading or withdrawn funds.

45. **Damages.** Plaintiff seeks compensatory damages of not less than $89,837, consisting of a direct account loss of $87,837 and the unprovided $2,000 promotional bonus. In addition, because Defendant's conduct was outrageous, intolerable, and foreseeable, Plaintiff seeks damages for emotional distress arising from Plaintiff's and Plaintiff's wife's suicidal ideation and Plaintiff's wife's subsequent hospitalization for severe blood loss. Further, because Defendant's conduct was egregious, willful, and wanton, Plaintiff seeks punitive damages under Virginia law, or, if Illinois law applies by contract, the enhanced punitive damages available against an Illinois Defendant.

**COUNT V**
**(Virginia Consumer Protection Act)**

46. Plaintiff realleges and incorporates paragraphs 1 through 45.

47. **Consumer Transaction.** Plaintiff, a resident of Alexandria, Virginia, opened a personal trading account as an individual retail investor, constituting a consumer transaction under the VCPA.

48. **Misrepresentation in Violation of § 59.1-200(A)(5).** Defendant misrepresented material facts by: (a) failing to prominently disclose the bonus restriction in its advertisement; (b) Defendant's staff member Jerry failing to disclose the bonus restriction when directly asked; (c) failing to respond to Plaintiff's September 22, 2023 inquiry about the missing bonus; (d) Kevin Labno's admission that the bonus was not available to Plaintiff, despite prior promises; (e) displaying an impossible negative balance that represented wrongful extraction of funds and a false debt obligation imposed on Plaintiff; and (f) falsely claiming the negative balance resulted from a "session timeout" attributable to Plaintiff, despite no timeout error ever appearing on Plaintiff's dashboard.

49. **Fraud in Violation of § 59.1-200(A)(14).** (a) Plaintiff was induced to deposit $138,100 from false promised bonus (b) Plaintiff made trades all throughout expecting the bonus as promised but never provided (c) On September 26, 2023, Defendant displayed market sell order confirmations but

failed to execute the order and extracted funds that were only partially returned after permanent losses occurred. In the highly leveraged futures market, such temporary extraction of $746,397.32— even for an hour, minutes, or seconds—can be deployed for rapid trades that generate substantial profits, as futures positions can multiply in value within moments; (d) blame Plaintiff for the session timeout.

50. **Bait and Switch in Violation of § 59.1-200(A)(8).** Defendant advertised a "$2,000 bonus" to attract deposits, then failed to prominently disclose restrictions, including a twelve-month freeze and undisclosed futures account ineligibility. Five months later, Defendant informed Plaintiff that the bonus was not available.

51. **Willfulness.** Defendant willfully misled Plaintiff by: (a) failing to disclose bonus restrictions when asked employee Jerry; (b) omitting restrictions from its advertisement to induce a $138,100 deposit; (c) allowing Plaintiff to trade from September 11—27, 2023 without crediting the promised $2,000 bonus; (d) ignoring Plaintiff's September 22, 2023 bonus inquiry; and (e) displaying false debts and extracting funds in disregard of Plaintiff's rights. Such deliberate misrepresentations constitute willful violations under the VCPA.

52. **Damages.** As a result of Defendant's conduct, Plaintiff suffered compensatory damages of $878,234.32, consisting of: (a) direct account loss of $87,837; (b) unprovided bonus of $2,000; (c) diminution of account value of $746,397.32, representing the price swing from $50,263 to −$696,134.32 in a fluctuating crude oil futures position; (d) medical expenses of $2,000; and (e) lost income of $40,000.

53. Because Defendant's conduct was willful and wanton, Plaintiff seeks, in the alternative and pursuant to Va. Code § 59.1-204, up to three times the compensatory damages amount, or $2,634,702.96 (3 × $878,234.32), together with prejudgment interest from September 26, 2023, attorney's fees, and costs.

**COUNT VI**
**(Breach of Fiduciary Duty)**

54. Plaintiff realleges and incorporates paragraphs 1 through 53.

55. **Fiduciary Relationship.** Tastytrade is a registered Introducing Broker with the CFTC and held exclusive custody of Plaintiff's $138,100 deposit. This relationship created fiduciary duties of care, loyalty, and good faith.

56. **Breach of Duties.** Tastytrade breached its fiduciary duties through:

(a) **Duty of Loyalty:** Creating false debt display as a result of extraction of $746,397.32 from Plaintiff's account to benefit itself over Plaintiff's interests. In the highly leveraged futures market, even temporary control over such large amount of funds for an hour, minutes, or seconds can generate substantial profits through rapid trades, as futures positions can significantly increase in value within moments.

(b) **Duty of Care:** Preventing execution of protective orders during market volatility. Ignoring Plaintiff's September 11, 2023 written instruction for "no leverage," abd advising 4:1 leverage on September 16, 2023.

(c) **Duty of Good Faith:** Crediting the promotional bonus only after administrative complaint on November 20, 2023—more than two months late—then immediately blocking its withdrawal, effectively ensuring the promised $2,000 bonus was never actually provided to Plaintiff despite his qualifying deposit.

(d) **Duty to Follow Instructions:** (a) Failure to execute market sell order on September 26, 2023; (b) Continue to provide futures account despite its ineligibility for the bonus and (c) directly contradicting Plaintiff's risk management instructions of no leverage.

57. **Causation.** These breaches directly caused Plaintiff's losses, including the September 26, 2023 emotional crisis and Plaintiff's wife's October 6, 2023 hospital confinement.

58. **Damages.** Plaintiff seeks compensatory damages of at least $89,837 (consisting of a direct account loss of $87,837 and the unprovided $2,000 promotional bonus), together with

prejudgment interest. Plaintiff also seeks disgorgement of ill-gotten gains—immediate fabricated profit of $746,397.32 from Plaintiff's legitimate account, distinct from the diminution of value pled under Count III (Conversion). Because Defendant's conduct was egregious, willful, and wanton, Plaintiff further seeks punitive damages under Virginia law, or, if Illinois law governs by contract, enhanced punitive damages available against an Illinois Defendant.

**COUNT VII**
**(Negligent Infliction of Emotional Distress)**

59. Plaintiff realleges and incorporates paragraphs 1 through 58.

60. **Negligent Conduct.** Tastytrade negligently displayed a false negative balance of $696,134.32 and prevented Plaintiff from executing protective trades, failing to exercise reasonable care in operating its trading platform and maintaining accurate account information.

61. **Physical Impact or Injury.** As a direct result of witnessing the false catastrophic debt, Plaintiffs' suffered physical manifestations of emotional distress, including: (a) acute stress reaction requiring crisis counseling; (b) prolonged inability to work requiring seven months of leave; (c) social withdrawal and isolation; and (d) Plaintiff's wife's hospital confinement on October 6, 2023 for acute blood loss during the period of severe stress.

62. **Foreseeability.** Tastytrade knew or should have known that displaying a false debt of $696,134.32 to a customer who deposited $138,100 would cause severe emotional distress with physical manifestations. The financial industry was on notice from the Alex Kearns case that false catastrophic debt displays can cause extreme psychological harm.

63. **Causation.** Tastytrade's negligent conduct was the direct and proximate cause of both Plaintiffs' emotional distress and resulting physical injuries, including the medical expenses and lost wages from his extended leave. The severity of the distress led Plaintiff to call a suicide hotline for support during this crisis.

64. **Damages.** Plaintiffs seeks compensatory damages for severe emotional distress, with physical manifestations, medical expenses, and lost wages, and other consequential damages. In light of Tastytrade's knowledge of the Kearns precedent and the extreme nature of its conduct, the amount of emotional distress damages should be determined by the jury.

## COUNT VIII
## (Intentional Infliction of Emotional Distress)

65. Plaintiff realleges and incorporates paragraphs 1 through 64.

66. **Intentional or Reckless Conduct.** Tastytrade knew or should have known that displaying a false debt of $696,134.32 to a customer with $138,100 invested would cause severe emotional distress. Tastytrade maintained this display for over one hour. Tastytrade's subsequent fabrication that Plaintiff allowed a "session timeout" caused the display—when no timeout error ever appeared on Plaintiff's dashboard—demonstrates consciousness of wrongdoing and a calculated attempt to blame the victim for Tastytrade's own catastrophic platform failure.

67. **Outrageous Conduct.** After seeing the false debt and being unable to execute trades, Plaintiff and Plaintiff's wife left their home in severe distress. Both experienced thoughts of self-harm while driving. Such conduct exceeds all bounds tolerated by decent society.

68. **Causation.** The false debt display directly caused Plaintiff's emotional crisis on September 26, 2023, and contributed to Plaintiff's wife's hospitalization on October 6, 2023, for acute blood loss.

69. **Severe Emotional Distress.** Plaintiff's wife was hospitalized at Inova Hospital in Alexandria, Virginia—her first hospitalization in over 20 years. Plaintiff took seven months of leave from work, called a suicide hotline for support, and sought crisis counseling. Both continue to experience lasting psychological effects.

70. **Industry Notice - Alex Kearns Case.** The financial industry was on notice from the widely-reported case of Alex Kearns, who died by suicide after seeing a false negative balance

exceeding $700,000 on another trading platform. Despite this known risk, Tastytrade displayed a similarly false catastrophic debt of $696,134.32, triggering comparable psychological crisis in Plaintiff and Plaintiff's wife.

71. **Damages.** Plaintiff seeks compensatory damages for severe emotional distress, with physical manifestations, medical expenses, and lost wages, and other consequential damages. In light of Tastytrade's knowledge of the Kearns precedent and the extreme nature of its conduct, the amount of emotional distress damages should be determined by the jury. Because Defendant's conduct was outrageous, willful, and wanton, Plaintiff further seeks punitive damages under Virginia law, or, if Illinois law governs by contractual choice of law, enhanced punitive damages available against an out-of-state Defendant.

## PRAYER FOR RELIEF

72. Plaintiff realleges and incorporates all preceding paragraphs 1 through 71.

73. WHEREFORE, having fully stated his causes of action and the grounds therefor, Plaintiff Jaison Francisco respectfully prays that this Honorable Court enter judgment in his favor and against Defendant Tastytrade, Inc., as follows:

**Prayer for Count I – Breach Of Contract**

74. That judgment be entered against Defendant and award Plaintiff compensatory damages of $89,837.00 consisting of: (a) Direct account losses of $87,837.00; (b) Unprovided promotional bonus of $2,000.00; (c) Prejudgment interest at the legal rate from September 26, 2023.

**Prayer for Count II – Fraud In The Inducement**

75. That the subject agreements be declared void ab initio and award Plaintiff: (a) Rescission of all transactions and award Compensatory damages of $89,837.00 consisting of: (a) Direct losses of $87,837.00; (b) Unprovided bonus of $2,000; (c) Punitive damages in an amount to be determined by

the jury for willful and wanton conduct; (d) Prejudgment interest at the legal rate from September 26, 2023.

**Prayer for Count III – Conversion**

76. Award Plaintiff compensatory damages of $696,134.32 the diminution of account value to −$696,134.32, representing the highest intermediate value of the fluctuating crude oil asset during the 65minute of wrongful conversion *(See Jordan v. Sauve, 219 Va. 448 (1978) (highest intermediate value)).*

77. If contract is void ab initio, in the alternative, award Plaintiff compensatory damage of $783,971.32 as the Price swing from $87,837.00 to -$696,134.32 for the highest intermediate value of fluctuating crude oil asset during the 65 minute of wrongful conversion *(See Jordan v. Sauve, 219 Va. 448 (1978)(highest intermediate value)).*

78. Award Plaintiff prejudgment interest at the legal rate from September 26, 2023. Because Defendant's conduct is willful and wanton, award punitive damages in an amount to be determined by jury.

**Prayer for Count IV – Fraud**

79. That judgment be entered against Defendant for fraud and award Plaintiff: (a) Compensatory damages of not less than $89,837.00 consisting of Direct losses of $87,837.00 and Unprovided bonus of $2,000.00; (b) Damages for emotional distress arising from Plaintiff's and Plaintiff's wife's suicidal ideation and Plaintiff's wife's subsequent hospitalization for severe blood loss; (c) Punitive damages for egregious, willful, and wanton conduct; (d) Prejudgment interest at the legal rate from September 26, 2023.

**Prayer for Count V – Virginia Consumer Protection Act**

80. That judgment be entered against Defendant for willful and wanton violations of Va. Code § 59.1-200 and award Plaintiff: (a) Compensatory damages of $878,234.32 consisting of: (i) direct account loss of $87,837; (ii) unprovided bonus of $2,000; (iii) diminution of account value of

$746,397.32, representing the price swing from $50,263 to −$696,134.32 in a fluctuating crude oil futures position; (iv) medical expenses of $2,000; and (v) lost income of $40,000; or in the alternative, pursuant to Va. Code § 59.1-204, treble damages of $2,634,702.96 (3 × $878,234.32); (b) Reasonable attorneys' fees pursuant to Va. Code § 59.1-204; (c) Costs of suit; (d) Prejudgment interest at the legal rate from September 26, 2023.

**Prayer for Count VI – Breach Of Fiduciary Duty**

81. That judgment be entered against Defendant for breach of fiduciary duty and: (a) Award compensatory damages of at least $89,837.00 (consisting of direct account loss of $87,837.00 and unprovided $2,000 promotional bonus); (b) Order disgorgement of ill-gotten gains— immediate fabricated profit of $746,397.32 from Plaintiff's legitimate account, distinct from the diminution of value pled under Count III (Conversion) and Count V (VCPA); (c) Award punitive damages for egregious breach of trust; (d) Award prejudgment interest at the legal rate from September 26, 2023.

**Prayer for Count VII – Negligent Infliction Of Emotional Distress**

82. That judgment be entered against Defendant and award Plaintiffs: (a) Damages for severe emotional distress with physical manifestations, to be determined by the jury; (b) Medical expenses incurred for treatment; (c) Lost wages for extended leave; (d) Other consequential damages as proven at trial.

**Prayer or Count VIII – Intentional Infliction Of Emotional Distress**

83. That judgment be entered against Defendant for intentional infliction of emotional distress and award Plaintiffs: (a) Damages for severe emotional distress resulting in suicidal ideation and crisis counseling; (b) Damages for Plaintiff's wife's hospital confinement and medical expenses; (c) Lost wages and diminished earning capacity; (d) Punitive damages for outrageous conduct, particularly given Defendant's knowledge of the Alex Kearns precedent.

**General Relief**

84. That the Court award Plaintiff: (a) prejudgment interest on all liquidated damage amounts at the maximum lawful rate from the date of injury; (b) post-judgment interest at the legal rate until paid in full; (c) all costs of suit, including reasonable attorneys' fees where authorized by law or equity; and (d) such other and further relief as the Court deems just and proper.

85. Plaintiff requests that the principal measure of compensatory and consequential damages be awarded under Count V (Virginia Consumer Protection Act), with all other counts pled in the alternative to avoid duplicative recovery. Pursuant to Va. Code § 59.1-204, Plaintiff seeks treble damages for willful violations of the VCPA.

86. In addition, Plaintiff respectfully requests that the jury award the maximum permissible punitive damages and damages for severe emotional distress under Virginia law, based on the egregious, willful, and wanton nature of Defendant's conduct. Plaintiff reserves the right to elect remedies at trial to ensure that no double recovery is awarded across counts.

87. Plaintiff further states that should Illinois law govern certain claims pursuant to contractual choice-of-law provisions, Plaintiff seeks punitive damages to the fullest extent permitted by Illinois law against an out-of-state Defendant.

**JURY TRIAL DEMANDED**

88. Plaintiffs demands trial by jury on all issues so triable as of right and hereby tenders the appropriate jury fee.

We, Jaison Francisco and Shenette Francisco, the Plaintiffs in the foregoing Complaint, declare under penalty of perjury under the laws of the Commonwealth of Virginia that the facts stated herein are true and correct to the best of our knowledge, information, and belief. Executed on August 30, 2025.

Respectfully submitted,

Jaison Francisco
Plaintiff, initially pro se
6850 Richmond Highway, Apt. 507
Alexandria, Virginia 22306
Telephone: (571) 355-2314
Email: jaison2@yahoo.com

Shenette Francisco
Plaintiff, initially pro se
6850 Richmond Highway, Apt. 507
Alexandria, Virginia 22306

## LIST OF EXHIBITS

**Exhibit A1:** Customer Agreement

**Exhibit A2:** Customer Agreement - Futures

**Exhibit B1:** Bank of America Deposit of $138,100.00

**Exhibit C1:** Bonus Offer Terms and Conditions

**Exhibit C2:** Bonus Advertisement

**Exhibit C3:** Bonus Email Inquiry

**Exhibit C4:** Bonus Follow Up

**Exhibit C6:** Bonus Not Available

**Exhibit D1:** Foundation Video Evidence (Timestamped 11:25:51 PM EST September 26, 2023)

**Exhibit D2:** Unexplained Debt of -$696,134.32

**Exhibit D3:** Market Sell Order Not Executed

# EXHIBIT A1

**tastytrade, Inc. Customer Agreement and Acknowledgments**

April 17, 2023

**DESCRIPTION:**

Thirteen-page Customer Agreement between Jaison Francisco, tastytrade, Inc., and Apex Clearing Corporation setting forth terms and conditions for brokerage accounts, including securities trading, margin accounts, options trading, electronic order execution, arbitration requirements, and customer obligations.

**AUTHENTICITY:**

I certify that the attached document is a true and correct copy obtained from Tastytrade.

Jaison Francisco, Plaintiff
August 30, 2025

tastytrade

## Customer Agreement and Acknowledgments

This tastytrade Customer Agreement ("Agreement") sets forth the terms and conditions pursuant to which tastytrade, Inc. ("tastytrade" or the "Firm") will open and maintain, and Apex Clearing Corporation ("Apex", "Clearing Firm") will carry one or more accounts, including, without limitation, cash, margin, options or other accounts (collectively, "Account") for you ("Customer" or "Account Owner"), either individually or jointly with others. Customer hereby represents, warrants and agrees as follows:

**1. Definitions**

**"Introducing Broker"** refers to tastytrade, **"Clearing Firm"** refers to Apex, and **"Undersigned Customer"** refers to you the Customer.

**"Market Data Providers"** shall mean Third-Party Providers that transmit market data.

**"Services"** shall mean collectively, the tastytrade website, brokerage services necessary for you to place trades and manage your Account, software, mobile, and web applications, information, tools, and services available by tastytrade.

**"Third-Party Services"** shall collectively mean third party providers and their services, including, but not limited to, financial and investment tools, reports, alerts, tax preparation, account management tools, calculators, access to online conferences, webcasts, and market information available to you through tastytrade's Services.

**"Securities"** as used herein and for the purpose of this Agreement, shall include, but not be limited to, money, securities, and commodities of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.

**"Website"** means the Internet site of tastytrade, Inc., whose domain name is registered as www.tastytrade.com.

**2. Applicable Rules And Regulations**

Your Account with tastytrade and any transactions you make are subject to the Firm's trading rules and policies, the rules and policies of the Clearing Firm and its exchange execution brokers, securities and futures regulatory authorities, Exchanges (any futures or securities exchange), futures contract, markets, the Options Clearing Corporation ("OCC") and all applicable federal, state and local laws, regulations and rules (collectively, "Applicable Rules and Regulations"). tastytrade's website and brokerage services are not intended for persons of any jurisdiction where tastytrade is not authorized to do business or where such products and other services offered by the Firm would be contrary to the securities regulations, futures regulations or other local laws and regulations of that jurisdiction.

**3. Customer Relationship With tastytrade And The Clearing Firm**

Customer acknowledges that all decisions relating to its investment or trading activity shall be made by Customer or its duly authorized representative. tastytrade does not provide investment advice or offer recommendations for the purchase or sale of securities, futures, options or other financial instruments. Customer acknowledges that any reference to advice referred to by the Clearing Firm are general terms and do not apply to tastytrade or its course of business. Customer acknowledges that tastytrade and the Clearing Firm are under no duty to inquire as to the authority or propriety of any instructions given to them, and that they shall be entitled to rely upon any such instructions without inquiry or investigation, including, without limitation, instructions with respect to the disbursement of funds and the transfer of securities. Customer acknowledges that tastytrade and the Clearing Firm do not provide legal or tax advice. Customer acknowledges that Customer has legal capacity to enter into this Agreement and Customer, if an individual, or Customer's representative, if Customer is an entity, is at least eighteen (18) years of age.

Customer hereby agrees to indemnify and hold tastytrade and the Clearing Firm and their respective officers, directors, employees, agents and affiliates harmless from any liability, financial or otherwise, or expense (including attorneys' fees and disbursements), on a current basis as incurred, (i) as a result of any losses or damages Customer may suffer with respect to any such decisions, instructions, transactions or strategies, or (ii) as a result of any breach by Customer of any of its covenants, obligations, representations, acknowledgments or warranties herein, or (iii) as a result of the provision of any services to Customer hereunder or any actions taken by either pursuant to this Agreement, unless such liability is a result of the Firm's willful misconduct.

tastytrade as an Introducing Broker has an agreement to introduce accounts on a fully disclosed basis to Apex to act as the Clearing Firm for your Account(s). You understand that the Clearing Firm will carry your Account and you authorize the Clearing Firm to accept from and rely on tastytrade for your executed orders for the purchase or sale of securities and other property as well as any instructions concerning your Account. You understand and acknowledge that the Clearing Firm's duties are to clear trades introduced by tastytrade and to perform other back-office functions for tastytrade.

You agree to accept communications from tastytrade and the Clearing Firm at your primary postal address and/or email address on record, or at other such addresses that you may hereafter give the Firm consent to keep on record. You understand and acknowledge that all communications sent to recorded addresses - postal and/or email addresses - shall be deemed to be given to you personally, whether actually received by you or not. tastytrade will enable you via its secure website and your unique login to view your Account Statements provided by its Clearing Firm.

You understand that tastytrade and the Clearing Firm are authorized, in their sole discretion, should tastytrade and/or the Clearing Firm for any reason deem it necessary for its protection, without notice to you, to cancel any outstanding order, to liquidate your positions, to close out your Account, in whole or in part, or to close out any commitment made on behalf of you.

**4. Electronic Order Execution Requests And Communication**

You agree to the following terms and conditions with respect to all electronic communications in which you communicate a request to an agent of tastytrade and any related information pertaining to such request. Requests may include instructions to execute an unsolicited order in your Account via phone or through the Firm's live support chat feature. The Firm will only accept orders via email under certain circumstances. You acknowledge that electronic or phone requests communicated to the Firm will be handled on a best efforts basis. Additionally, these terms and conditions require you to acknowledge your responsibility to protect your sensitive account information as well as your responsibility to routinely monitor your account information and activity. Any orders communicated to tastytrade's platform with your user login information will be considered to have been sent and authorized by you.

(a) You agree you will not transmit securities trade orders to tastytrade using electronic communications other than those designated by tastytrade for the express purpose of placing securities orders.
(b) You agree that it is your responsibility to promptly notify tastytrade if you receive a trade confirmation for an order that you did not place.
(c) tastytrade, in its sole discretion, may decline to execute any of your orders for a variety of reasons, including, but not limited to, size of the order, market conditions, violations of your Agreement(s) with the Firm, inadequate account equity, insufficient margin, risk considerations, suitability thresholds, Exchange (CBOE, ISE, NYSE, etc.) restrictions or trading halts, and other matters or market conditions that affect trading.
(d) You agree that you are responsible for the monitoring of all of your orders entered into tastytrade's platform or via tastytrade's electronic communication system until such order is accompanied by an official confirmation or cancellation given by tastytrade.
(e) You agree to be bound by the actual order execution transacted on the listed U.S. Exchange that resulted from the entry of your order for your Account.
(f) If tastytrade confirms an Account trade or other activity in error and you delay reporting such error, the Firm reserves the right to remove the trade or activity from your Account or require you to accept the trade or activity at tastytrade and/or the Clearing Firm's discretion.
(g) You agree to provide tastytrade with your primary email address and to promptly update your account profile with any changes to your email address or any other relevant information that is pertinent to your account status and/or our ability to communicate with you.
(h) You agree to protect your sensitive account information, including, but not limited to, your password, username, other login credentials.
(i) You agree to not give your account login credentials or make them easily accessible to a minor.

**5. Electronic Trading**

You acknowledge that you bear all risk associated with your orders, regardless if they are placed through tastytrade's platform, through a tastytrade's representative or otherwise. You acknowledge that you are solely responsible for all orders (whether successfully entered or attempted to be entered) that are associated with your unique customer identifiers, including, but not limited to, your Account number, customer identification number, or your unique user login credentials. You understand that tastytrade's acceptance of an order for placement, which includes, but is not limited to, Firm representatives, the tastytrade platform, email, chat or phone, does not constitute a guarantee of any kind that your order will be placed as all orders are subject to your account maintaining sufficient margin to support the resulting position. You acknowledge that tastytrade and the Clearing Firm reserve the right to set and/or change, without prior notice to you, minimum equity amounts for your Account. You hereby acknowledge your responsibility to do the following:

(a) to be aware of current margin requirements with respect to all trading activity; and
(b) to meet all initial and maintenance margin requirements; and
(c) to be liable for the losses incurred on all of your trades, regardless of whether sufficient margin was posted at the time the trade was ordered.

You acknowledge that under no circumstances, including, but not limited to, electronic or mechanical failure, Internet system failure or delay, Exchange limitations or halts, acts of God, terrorism, or any other reason, shall tastytrade be liable or have direct responsibility to you in the event that any of the following should occur:

(a) you are unable to access or use the tastytrade website, trading software, applications (web, desktop, mobile) to place an order, view account information, or otherwise engage in stock and/or options related activities;
(b) any Exchange, aggregator, the Clearing Firm, or clearing corporation endures any mechanical, electrical or other failure, delay, interruption, or congestion regardless of whether or not any of the aforementioned results in a failure to maintain an orderly market, execute a transaction, preform clearance, report on cancels or nothing dones or confirm executed and transactions for your account, or otherwise.

You acknowledge that tastytrade is not responsible for providing nor guarantees full and complete access to all electronic markets, and under no circumstances is liable for losses that may result from the inability to access markets due to any aforementioned restrictions or otherwise.

You acknowledge that it is your sole responsibility to cancel any and all unexecuted day orders that could otherwise normally be executed during regular market hours when access cannot be provided by tastytrade.

If tastytrade believes that execution or attempted execution of any of your orders may breach any Applicable Rules and Regulations including but not limited to SEC, FINRA, CBOE, ISE or any other US Exchange Rules or Firm policies, tastytrade may, in its sole discretion, delay or refuse to execute any purchase or sale order for your Account at any time.

**6. Market Orders, Limit, And Day Orders**

You understand and acknowledge that when you place a market order, the price of the security may change between the time the order is placed and the time it is executed. A quote obtained at the time a market order is entered is not a guarantee that all or part of your order will be executed at the quoted price.

You understand that when you place a market order after an Exchange, association, electronic communications network or market is closed, the security may open for trading the next business day at a price substantially higher or lower that what you had originally entered. Large market orders may be executed in multiple lots, and at different prices. You understand that generally a market order is subject to immediate execution and cannot be canceled once it is entered. You agree that any attempt you make to cancel a market order is simply a "request" to have that order canceled and that actual cancellation of the order cannot be guaranteed. You understand that limit orders will be executed only at the specified price entered by you or better, but there is the possibility that the limit order will not be executed. All day orders will be typically cancelled at the end of the trading day 3:00pm CT or when applicable to 3:15pm CT for certain option symbols including index options.

**7. Commissions And Fees**

You agree to pay tastytrade's brokerage commissions, transaction, processing, clearing fees, market data fees, other fees, and taxes as they exist from time to time and apply to your Account. You acknowledge that tastytrade reserves the right to change its commissions and fees in its sole discretion separate from any changes that the Clearing Firm makes to its fees. tastytrade will make relevant information about such commissions and fees, including any update that the Clearing Firm provides that is applicable to tastytrade's Customer Accounts, available on the Firm's website at www.tastytrade.com. Furthermore, you acknowledge that tastytrade may deduct all fees directly from your Account and your execution of this Agreement serves as your authorization for the Firm to do so. You understand that profit and loss calculations on the trading platform or your account statements may not include commissions, fees or other transaction costs, and do not reflect the impact such costs will have on actual results.

**8. Payment Of Indebtedness Upon Demand**

You acknowledge and agree that you will be liable at all times for the payment upon demand, of any debit balance, liability, and indebtedness owing in your Account. Furthermore, you acknowledge and agree that you will be liable for any deficiency remaining in your Account in the event of a liquidation thereof in whole or in part by you or by tastytrade or the Clearing Firm, and you shall make payment of such obligations upon demand.

**9. Interest On Debit Balances and Costs Of Collection**

Debit balances in your Account may be charged interest in accordance with tastytrade's then-current interest rate schedule for debit balances. You agree to pay tastytrade all reasonable costs and expenses of enforcement or collection of any debit balance or other liabilities, including legal fees.

**10. Dividend Reinvestment Program**

You acknowledge that in order to automatically reinvest your cash dividends paid by an eligible underlying security in your Account, you must opt in for enrollment in the Dividend Reinvestment Program ("Reinvestment") from within your Account profile. Enrollment requests will take effect within one (1) business day at a minimum. If enrollment is in effect prior to the ex-dividend date for a distribution, the distribution will be eligible for Reinvestment. In order for your securities to be eligible for dividend reinvestment, they must be held and settled in your tastytrade Account held at the designated Clearing Firm. It is your responsibility to explicitly opt in for individual securities or all eligible securities in your Account to be enrolled in Reinvestment. You acknowledge that all eligible securities, including securities purchased in the future, will automatically participate in Reinvestment if you elect to have your entire tastytrade Account set up for dividend reinvestment. Once you are enrolled in Reinvestment, all eligible cash distributions will be reinvested on all securities you selected for dividend reinvestment, provided that you are the Account Owner of record on the record date for determining shareholders eligible to receive dividends and continue to hold the securities through the payable date. If you are a margin Account Owner, you agree that it is possible that the Clearing Firm will borrow a dividend-paying stock in the normal course of business and, as a result, instead of receiving a dividend payment you may receive a "cash-in-lieu" payment. In the event you receive a "cash-in-lieu" payment, you authorize the Clearing Firm to handle such payment as if it was not "in-lieu" and reinvest it accordingly.

You acknowledge that the Clearing Firm may facilitate Reinvestment by purchasing shares in the open market and, as a result, the purchase price for the new shares may not be known before the dividend is reinvested. You acknowledge that participation in Reinvestment may result in the purchase of fractional shares of securities. Furthermore, you acknowledge that if there is a corporate action that will yield fractional shares, you will receive a cash-in-lieu payment.

You acknowledge that you are the sole party responsible for terminating your participation in Reinvestment, including terminating the enrollment of individual securities in Reinvestment, and may do so by opting out at any time. Termination requests will take effect within three (3) business days at a minimum. If termination is in effect prior to the ex-dividend date for a distribution, the distribution will not be eligible for Reinvestment. Furthermore, you acknowledge that your notice to terminate will not affect any obligations that may result from transactions initiated prior to you successfully opting out of Reinvestment. You agree that your participation in Reinvestment is voluntary and that tastytrade has not made any recommendation with respect to your participation or regarding the purchase of any eligible security.

**11. Responsibility Regarding Certain Securities**

Certain securities may grant a holder valuable rights that may expire unless a holder takes some action. Such securities include, without limitation, options, warrants, convertible securities, bonds, and securities subject to a rights plan or tender or exchange offer. You acknowledge that you are responsible for knowing the rights and terms of all securities in your Account. tastytrade is not obligated to notify you of any expiration date or corporate action or take any action on your behalf without specific instructions from you.

Voluntary corporate actions include, without limitation, tenders, exchange offers, mergers with an election, odd-lot offers, Dutch auctions, and any rights or warrants subscriptions. You acknowledge that in order to participate in a voluntary corporation action, you must contact tastytrade and provide participation instructions. Participation instructions will be processed within a minimum of three (3) business days. You agree to hold tastytrade harmless if participation instructions are not processed before the Clearing Firm's cutoff time and you acknowledge that in such instances the Firm may not be able to facilitate your participation in the corporate action. You acknowledge that tastytrade reserves the right to reject, at its own discretion, participation instructions in a voluntary corporate action. You acknowledge that tastytrade may, upon receipt of participation instructions, restrict trading in your Account or remove applicable securities from your Account until the corporate action is completed. You acknowledge that you are responsible for maintaining any assets in your account necessary to facilitate completion of any voluntary corporate action for which you provided participation instructions and you are responsible for any positions resulting from participation and trading. Furthermore, you acknowledge that tastytrade or the Clearing Firm may modify your participation instructions if your position in the participating security is modified before the corporate action is completed.

**12. Extraordinary**

You acknowledge that tastytrade is not responsible and you agree to not hold tastytrade liable for the losses caused, directly or indirectly, by conditions beyond the Firm's control, including, but not limited to, government restrictions, amendments to exchange or market rules, interruptions of communications or data processing services, market volatility, unusual activity, trading halts, trading restrictions or disruptions in orderly trading on any exchange or market.

**13. Notices And Customer Communication**

You acknowledge that by accepting this Agreement you are consenting to electronic delivery of documents and communications, and you authorize tastytrade and the Clearing Firm to deliver documents and communications by the following means:

(a) emailing to the email address specified by you and on record with the Firm and the Clearing Firm;
(b) posting a communication on the website or making available, either on the Firm's website or sent via email, links to other sites (such as the Clearing Firm) on the Internet where the communication can be read and printed;
(c) sending you an email or other notice that directs you to an address on the Internet or a place within the website where the communication is posted and from which it can be read and printed.

You acknowledge and agree that as a broker-dealer, tastytrade is authorized to contact your trusted contact person and disclose information about your account to address possible financial exploitation, to confirm the specifics of your current contact information, health status, or the identity of any legal guardian, executor, trustee, or holder of a power of attorney, or as otherwise permitted by FINRA Rule 2165.

**14. Electronic Signature**

You understand that your electronic signature to sign documents is legally binding in the same manner as if you manually signed such documents. Additionally, you understand that the use of an electronic version of these documents fully satisfies any requirement that they be provided to you in writing. You understand that when you electronically sign a document, you are representing that you have read, understand, have the ability to access and retain a record of the document, and agree to be bound to the terms and conditions contained thereon. It is your responsibility to review the website at least periodically at www.tastytrade.com for changes or modifications.

**15. Notification Of Recording**

You acknowledge that tastytrade reserves the right to monitor or record telephone conversations with all of its customers. Your execution of this Agreement evidences your consent to such monitoring or recording of your conversations between you and tastytrade's employees, representatives, officers, directors, partners or agents by means of electronic telephone recording equipment. You understand that the Firm may, in its sole and absolute discretion, tape record conversations without further notice or disclosure, without the use of an automatic tone-warning device, and without assuming responsibility to make or retain such tape recordings.

Furthermore, you acknowledge and agree that such recordings of telephone conversations may be used by the Firm as evidence in any dispute between you and the Firm. You agree that you will not record any telephone conversations with tastytrade's employees, representatives, officers, directors, partners or agents without the express written consent of tastytrade and the consent from any aforementioned tastytrade individual engaged in the conversation.

**16. Market Data**

tastytrade obtains market data from exchanges, markets, associations, electronic communications networks, and from other Third-Party Providers that transmit market data (collectively, "Market Data Providers"). You acknowledge that the market data is provided "as is" and on an "as available" basis. There is no warranty of any kind, express or implied, regarding the market data. The market data is believed to be reliable, but neither tastytrade nor Market Data Providers can guarantee the accuracy, completeness, timeliness or correct sequencing of the market data. Therefore, you agree that tastytrade may correct any execution reported to you that was based on inaccurate market data, unbeknownst to tastytrade, provided to the Firm by Market Data Providers. You understand that you are responsible for any corrected price or size of the execution of your order that reflects the actual execution of your order pursuant to the Exchange's rules where your order was routed for execution. Furthermore, you agree to not hold tastytrade or Market Data Providers liable for interruptions in the availability of market data or your access to market data. You agree to hold harmless and indemnify tastytrade, its officers, directors, employees, agents and affiliates and those officers, directors, employees, agents and affiliates of the Market Data Providers from any liability with respect to interruptions in the availability of market data, your access to market data, lost profits, trading losses or any other damages resulting from inaccurate, defective or unavailable market data. To the extent a tribunal from of component jurisdiction determines that tastytrade should be held liable for any such losses, you agree that tastytrade's liability will not exceed the amount you paid for the receipt of the market data. You acknowledge that the Market Data Providers have a proprietary interest in their market data. You may not sell, market, repurpose or redistribute the market data in any way. You acknowledge that it is solely your responsibility to ensure your employment information and use of market data on record is current and accurate at all times, and you agree to pay all applicable fees charged to as result of you not properly disclosing your employment information and use of market data as tastytrade reserves the right to do so.

**17. Joint Accounts**

For your Account with more than one Account Owner, references to the "Undersigned Customer" shall include each of the Customers identified on the Account application and Account record. Customers understand and agree that the representations, warranties and Agreements made herein are made on behalf of all of the joint Account owners and further agree that each Account owner:

(a) is a Customer;
(b) has the authority to act on behalf of the Account and tastytrade may rely on and accept instructions from any one Customer;
(c) is jointly and severally liable per the terms and obligations of this Agreement.

tastytrade may rely on money, position, account transfer or other instructions from any one of the Customers in a joint Account, and such instructions shall be binding on each of the Customers. tastytrade may deliver securities or other property to, and send trade confirmations, notices, account statements and confirmations of any kind, to any one of the Customers, and such action shall be binding on each of the Customers.

Notwithstanding the foregoing, tastytrade is authorized in the Firm's discretion to require joint action by the joint Account owners with respect to any matter concerning the joint Account, including, but not limited to, the giving or cancellation of orders and the withdrawal of money or securities. Customers hereby acknowledge that tastytrade shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given and shall be under no obligation to see to the applications of any funds so delivered. If tastytrade becomes aware of divorce proceedings between joint Account holders or there is a disagreement between Account holders as to the handling of the Account, tastytrade may, but is not obligated to, freeze the Account or require joint authorizations for instructions on the Account.

For Joint Accounts With Rights of Survivorship ("WROS"), Customers agree that in the case of death of any of the joint Account

owners, interest in the entire Account shall vest in the surviving Account owner(s) under the same terms and conditions of this Agreement and the surviving Account owner(s) shall promptly provide tastytrade with written notice thereof and provide any documentation reasonably requested by tastytrade and/or the Clearing Firm in its management of the Account.

**18. Entity And Trust Accounts**

You represent and warrant the following if you maintain an Entity or Trust Account with tastytrade:

(a) You are authorized to open and maintain the Entity Account on behalf of the Entity identified in the Entity application;
(b) You are the Trustee of the Trust identified in the Trust application and are authorized to open and maintain the Trust Account on behalf of the Trust;
(c) The Entity expressly grants to you or the Trust expressly grants to you the power to enter into transactions for the purchase and sale of securities and other investments, including, without limitation, stocks, options (including, but not limited to, the purchase of puts and calls and the sale of covered and uncovered puts and calls), bonds, and mutual funds;
(d) The Entity expressly grants to you or the Trust expressly grants to you the power to engage in any and all commodity futures products, including, without limitation, futures options, if you trade any commodity futures products; and
(e) If the Account is not opened as a Cash Account, the Entity expressly grants to you or the Trust expressly grants to you to open and maintain a Limited Margin Account or a Margin and Short Account, and through such Margin and Short Account to borrow money to purchase securities on margin, sell securities the Entity or Trust does not own and to borrow securities in connection therewith.

For your Entity Account or Trust Account with more than one Account Owner, references to the "Undersigned Customer" shall include each of the Customers identified on the Account application and Account record. Each Customer acknowledges, represents, certifies, and agrees:

(a) The Entity or Trust expressly authorizes that each Customer is authorized to act independently and without the consent of the other Customer(s);
(b) Each Customer has consented to each Customer acting independently and without the consent of the other Customer(s) with respect to the Entity or Trust Account, and that such delegation of authority is expressly authorized by the Entity or Trust and applicable law, and can be provided promptly to tastytrade upon the Firm's request;
(c) Each Customer has authority to act on behalf of the Account and tastytrade may rely on and accept instructions from any one Customer;
(d) That any notice sent to one Customer will constitute notice to all Customer;
(e) That tastytrade reserves the right, in its sole discretion, to require the written, and if requested, notarized, consent of any or all Customers prior to acting upon the instructions of any other Customer; and
(f) That neither they nor the Entity or Trust impose any obligation upon tastytrade for determining the purpose or origin of any instruction received from any Customer or any payments to or among any Customer.

You acknowledge that by accepting the terms of this Agreement you are certifying and attesting that the Entity or Trust is in good standing and has not been revoked, modified, or amended in any manner which would cause the information you provided in the Entity or Trust Account application to be incorrect. You agree to promptly notify tastytrade in writing of any change that would cause the information represented in your Entity or Trust Account application or its corresponding Account record to be incorrect or incomplete.

**19. Option Accounts**

There is a high degree of risk involved in trading option transactions, and you acknowledge that you are aware of such risks and have given tastytrade information that demonstrates the anticipated trading privileges you have elected to utilize with the Account opened by you are not unsuitable for you in relation to your investment objectives, financial situation, experience and knowledge. You agree to take full responsibility to advise tastytrade of any changes in your investment objectives, financial situations or other circumstances that are, or may be deemed, to materially affect the suitability of executing option transactions in your Account.

You hereby acknowledge and agree to the following terms, conditions, and representations if you elect to engage in option transactions in your Account:

(i) You agree to be bound by the terms of Apex's (Clearing Firm's) Customer Option Agreement in addition to the terms containedherein.

(ii) You acknowledge that trading equity and index options is highly speculative and contains a high degree of risk.

(iii) You agree to be financially capable of undertaking the risks associated with trading equity and index option contracts and agree to be able to endure any losses incurred by trading such products.

(iv) You agree to read and fully understand the Options Disclosure Document ("ODD"), also known as the Characteristics and Risks of Standardized Options, issued by the OCC prior to entering your first option transaction (purchase or sale of any option contract) in your Account.

(v) You agree to read and fully understand the Special Statement for Uncovered Option Writers prior to entering your first uncovered option transaction in your Account.

(vi) You agree to comply with all Applicable Rules and Regulations, including, but not limited to, the Applicable Rules and Regulations specific to margin Accounts if you engage in option transactions in your marginAccount.

(vii) You agree to not exceed, alone or in concert with others, the position and exercise limits imposed by the rules of the OCC.

(viii) You agree to contact tastytrade by 3:30pm Central Time with any request by you to exercise an option contract that would otherwise not be exercised by the OCC, to not exercise an option contract that would otherwise be exercised by the OCC, or to exercise any option contract prior to the expiration of that option contract, and agree that your failure to do so may prevent any change to the Options Clearing Corporation's routine exercise process.

(ix) You acknowledge that tastytrade reserves the right, but is under no obligation to liquidate, exercise, or submit a 'Do Not Exercise' request for your Account or on your behalf, without prior notice to you, in order to comply with the Firm's policies, the Clearing Firm's policies, or those contained within Applicable Rules and Regulations.

(x) You acknowledge that if you own an option that is about to expire in the money, tastytrade may, in its sole discretion or in accordance with Applicable Rules and Regulations, and without prior notice to you, close out the option position. However, tastytrade is under no obligation to buy, sell or exercise any options on your behalf.

(xi) You agree that upon assignment, you must either deliver or accept the required number of shares of the underlying security in the case of an equity option, or you must pay or receive the settlement price in cash in the case of an equity index option.

(xii) You authorize tastytrade, in its sole discretion, as it may deem necessary for the Firm's protection, to take immediate action, without prior notice to you, by cancelling any outstanding order(s), closing out any Account position(s) of yours, in whole or in part, or to close out any commitment made on your behalf.

(xiii) You acknowledge that a random method of allocation is used by the Clearing Firm for all option assignments received from the OCC, exercise assignment notices for option contracts are allocated among all Customers' short positions within that series, and this is accomplished by a manual procedure, which randomly selects from among all customer short positions, including positions established on the day of assignment, those contracts which are subject to exercise. A more detailed description of the allocation method used by the Clearing Firm is available upon request.

**20. Margin Accounts**

You acknowledge that when you purchase securities on margin, you are borrowing money from the Clearing Firm and pledging all securities and other property in your Account as collateral for the loans. You acknowledge that trading securities on margin involves a variety of risks, and you agree to take full responsibility to advise tastytrade of any changes in your investment objectives, financial situations or other circumstances that are, or may be deemed, to materially affect the suitability of executing margin transactions in your Account.

You hereby acknowledge and agree to the following terms, conditions, and representations if you elect to engage in margin transactions in your Account:

(i) You agree to be bound by the terms of Apex's (Clearing Firm's) Customer Margin and Short Account Agreement in addition to the terms contained herein.

(ii) You acknowledge there are Applicable Rules and Regulations regarding margin loans, which include the initial margin and maintenance requirements for margin Accounts. Furthermore, you acknowledge that tastytrade reserves the right to impose more stringent margin requirements based on the Exchange or regulatory margin required or higher, which may change from time to time without prior notice to you.

(iii) You agree to maintain at least $2,000 in minimum equity in order to trade on margin.

(iv) You agree to promptly satisfy all margin and maintenance calls.

(v) You acknowledge that neither tastytrade nor the Clearing Firm are obligated to request additional securities or other property for margin purposes in the event your margin Account falls below minimum margin requirements, notify you of any such deficiency, or allow you time to deposit additional securities or other property.

(vi) You agree to pay interest on all debit balances on a non-aggregated basis in your margin Account. You acknowledge

that interest shall be computed and changed in accordance with tastytrade's and the Clearing Firm's standard methods and procedures. A more detailed description is available upon request.

(vii) You acknowledge and agree to pay any fees associated with short stock borrowing on securities where applicable. Included in these fees are any applicable fees from the Clearing Firm for unexecuted short shares that have been allocated to you.

(viii) You agree that all securities and other property held, carried or maintained by the Clearing Firm may, at any time and without notice to you, be loaned, pledged, repledged, hypothecated or re- hypothecated by the Clearing Firm, either separately or in common with other securities and other property, for any amount due in any Margin Account. You acknowledge this may be done without tastytrade or the Clearing Firm retaining in its possession or under its control for a delivery a like amount of similar securities or other property. You acknowledge that if your securities are loaned, pledged or hypothecated, you will receive substitute payments in lieu of the dividends you would have received had your securities not ben loaned, pledged or hypothecated. The substitute payments do not qualify as dividends and are taxed as ordinary income.

(ix) You acknowledge that you have received, read and understand the statement(s) explaining the conditions under which interest will be charged to the Margin Account, how rates of interest are determined, how debit balances are determined, and the methods of computing interest. Furthermore, you acknowledge you may contact tastytrade for documents, statements, and more detailed explanations.

(x) You acknowledge that there are required disclosures for margin applicable to day trading, which can be found on the tastytrade's website at www.tastytrade.com. You agree that you will read and understand all applicable disclosures before you engage in day trading.

**21. Termination**

Your tastytrade Account may be terminated and closed by you, tastytrade, or by the Clearing Firm at any time with or without cause or reason. You acknowledge that you must and you agree to provide written notice in the event that you so wish to terminate your Account. You are aware and agree that such closure or termination will not affect any rights or obligations that either you or tastytrade incurred prior to such closure or termination, including any transactions arising before or after termination of the Agreement.

**22. Assignment**

tastytrade may assign our rights and obligations under this Agreement to any subsidiary, affiliate, successor or assigned, whether by merger or consolidation or otherwise, without notice to you. This Agreement is binding on and will inure to the benefit of you and your heirs, executors, administrators, personal representatives, successors and assigns, but is not assignable by you.

**23. Indemnification**

You hereby, in both personal and representative capacities, agree to hold harmless, defend, and indemnify tastytrade and its officers, directors, employees, agents, affiliates, and Third-Party Providers and their respective officers, directors, employees, agents, and representatives from any and all liabilities, losses, costs, judgments, penalties, claims, actions, damages, expenses, and attorney's fees and disbursements (collectively, "Losses") resulting or arising directly or indirectly from your use of your Account and services provided by tastytrade and/or the Clearing Firm, including, but not limited to:

(a) as a result of your acts or omissions;
(b) as a result of any of the other Account Owners' acts or omissions;
(c) as a result of any losses or damages you may suffer with respect to your Account;
(d) as a result of any breach by you of any of the Agreement's covenants, obligations, representations,
(e) acknowledgments or warranties;
(f) as a result of the provision of any services provided to you; or
(g) as a result of any actions taken by tastytrade as allowed by this Agreement and all binding agreements that you have entered into, including future agreements you may enter into, with respect to your Account(s) ownership, except for losses resulting from our gross negligence or willful misconduct.

**24. Limitation Of Liability**

You agree and understand that there may be delays or interruptions in the use of tastytrade's systems. Furthermore, you agree and understand that tastytrade's systems are being provided "as is" and "as available" and there is no implied or express warranty, including implied warranties of merchantability, non-infringement, or fitness for a particular purpose, and

implied warranties arising from course of conduct, course of dealings, regarding tastytrade's systems. tastytrade, its affiliates, Third-Party Services, Market Data Providers, and their respective licensors, officers, directors, employees, distributors, or agents make no representations with respect to the system and expressly disclaim all warranties. You agree and understand that in no event will tastytrade, its affiliates, Third-Party Services, Market Data Providers, or their respective licensors, employees, distributors, or agents be liable to you or anyone else for any loss or damage incurred with respect to your Account, including consequential, incidental, punitive, lost profits or trading losses, or loss of use of services, or special or indirect damages, including, but without limitation, that result from inconvenience, delay or loss of the use of any of tastytrade's systems. You acknowledge and agree that neither tastytrade nor any Market Data Provider make any representations, warranties, or other guarantees as to the accuracy or timeliness of any market data or to the present or future value or suitability of any transaction involving a particular security, product, or any other investment.

You acknowledge that tastytrade allows third party service providers to connect to the Firm's Open API. You are advised that if you give your tastytrade username and password to a third party service provider that connects to the Firm's Open API, it is possible that the third party service provider will be able to access your personal information ("PII") that was given to tastytrade. If you are concerned about the access of your PII, you acknowledge and agree that it is your responsibility to contact the third party service provider in question to ask them what information they are accessing and review such third party service provider's privacy policy as tastytrade is not responsible for the privacy policies and practices of any third party who provides services to you directly.

You acknowledge and agree to hold tastytrade harmless from any losses or damages due to language barriers. You acknowledge that tastytrade only guarantees customer and account support as well as its brokerage services in English.

**25. Proprietary Information**

You agree not to reproduce, retransmit, disseminate, sell, distribute, publish, broadcast, circulate or otherwise exploit tastytrade's proprietary systems or any content contained therein in any manner without tastytrade's express written consent. You agree to comply with reasonable written requests by the Firm to protect tastytrade's system and respective rights therein.

tastytrade hereby grants you a revocable, non-transferable, non-exclusive, limited license to use tastytrade's systems, applications, and website (collectively "Proprietary Property") for the purpose of trade routing and execution and management of your Account in accordance with the terms and conditions of this agreement. All copyright and other intellectual property rights, including, but not limited to, rights to patents, copyrights and/or trademarks shall be the sole property of tastytrade, Inc. You agree not to disclose any aspect of tastytrade's Proprietary Property or confidential information of any sort that may be received as a result of the use of tastytrade's Proprietary Property. You agree not to use any of tastytrade's Proprietary Property or any information disseminated by tastytrade's Proprietary Property for any illegal purpose, or other than strictly in accordance with the End User License Agreement between you and tastytrade.

You agree not to copy, modify, reverse engineer, decompile, adapt or reduce to readable form or create a derivate product of any aspect of tastytrade's Proprietary Property or any content contained therein. You agree and understand that all subsequent updates, replacements, enhancements, revisions, additions, conversions or the like are subject to this Agreement.

**26. SIPC Protection**

tastytrade is a member of the Securities Investor Protection Corporation (SIPC). Therefore, funds are available to meet customer claims up to $500,000, which includes a maximum of $250,000 for cash claims. Apex, as the Clearing Firm, has arranged for coverage above the SIPC limits; please contact tastytrade for more information. For additional information on SIPC coverage, including a brochure upon request, please contact SIPC at 202-371-8300 or asksipc@sipc.org. You can also visit the SIPC website at www.sipc.org.

**27. Auto-Sweep Program**

You understand and agree that if you have a tastytrade Securities Account and a tastytrade Futures Account that if available cash is held in the Futures Account at the end of the trading day, such available cash is automatically swept from the Futures Account to the Securities Account. You acknowledge that regardless of where your available cash is held, Applicable Rules require proper segregation of your and other Customers' assets from tastytrade's and the Clearing Firm's assets. You further acknowledge that transferring available cash from your Futures Account to your Securities Account will result in you not receiving preferential treatment afforded for funds held in a Futures Account pursuant to Part 190 of the CFTC regulations and the U.S. Bankruptcy Code. Therefore, any funds you hold in a Securities Account for the purpose of purchasing securities or held in a portfolio margin account carried as a Securities Account are protected by SIPC. You should refer to the above paragraph or to the SIPC website, http://www/sipc.org for more information regarding SIPC coverage.

As permitted by Applicable Rules, you agree that tastytrade may, in its sole discretion, and without prior notice to you, transfer excess funds or collateral between your Securities and Futures Accounts in such amount as tastytrade deems may reasonably be required to avoid margin calls or to reduce or satisfy any deficit, or other liability. You acknowledge that funds will not be credited to your Account until the funds are actually transferred.

**28. Payment For Order Flow**

Pursuant to SEC Rule 606, all broker-dealers are required by the Securities and Exchange Commission ("SEC") and Financial Industry Regulatory Authority ("FINRA") to inform their customers of payment for order flow arrangements and practices at the time of account opening and annually thereafter. tastytrade routes orders for execution to unaffiliated broker-dealers who may act as a market-maker or facilitate execution of the orders in other market centers. tastytrade considers a number of factors in evaluating execution quality, including execution price, opportunities for price improvement, order size, the trading characteristics of the security, speed and accuracy of executions, the availability of efficient and reliable order-handling systems and market data, liquidity, the likelihood of execution of limit orders, and execution costs. tastytrade may also use discretion in selecting a particular broker-dealer or market center in which to route customer orders. Price improvement occurs when an order is executed at a price more favorable than the displayed national best bid or national best offer. tastytrade receives monetary remuneration from other-broker dealers or market centers to which orders are routed. Quarterly information regarding the broker-dealers or market centers to which tastytrade routes orders and receives remuneration is available on the tastytrade website at www.tastytrade.com. The source and amount of such remuneration will be furnished upon written request.

**29. Anti-Money Laundering And Customer Identification Program**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

- Name, Address, Date of birth
- Identification number:
  - U.S. citizen: social security number or employer identification number.
  - Non-U.S. citizen: taxpayer identification number; passport number and country of issuances; alien identification card number; or government-issued identification disclosing nationality, residence and a photograph of you.

tastytrade reserves the right to collect other information and identifying documents to aid in verifying your identity, such as, but not limited to, a valid, non-expired form of government issued photo identification (i.e., driver's license or passport). For verification purposes, tastytrade may also utilize a third-party information provider and/or service.

A corporation, partnership, trust or other legal entity opening an account will need to provide a valid taxpayer identification number ("TIN"), and may need to provide other and/or additional information such as, but not limited to, its principal place of business, local office, government-issued business license, certified articles of incorporation, a partnership agreement, or a trust agreement. Due to the nature of the account type, tastytrade will not open private banking accounts at this time.

The rules set forth by the U.S. Department of Treasury, SEC, Commodities Futures Trading Commission ("CFTC"), FINRA, and the National Futures Association ("NFA") may also require tastytrade to collect additional information such as your net worth, annual income, occupation, employment information, investment experience, investment objectives, and risk tolerance.

tastytrade reserves the right to not open an account or carry out transactions for you if your identity cannot be verified. If you have an existing Account, tastytrade reserves the right to close the Account at any point in time if your identity cannot be verified as part of tastytrade's ongoing effort to prevent fraud.

**30. Arbitration**

**This Agreement contains a predispute arbitration clause. You acknowledge that by executing this Agreement you agree to the following with respect to arbitration:**

(i) **All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

(ii) **(ii) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

(iii) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
(iv) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.
(v) The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.
(vi) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
(vii) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.
(viii) No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (a) the class certification is denied; or (b) the class is decertified; or (c) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

Any controversy, claim (statutory or otherwise), cause of action or other dispute among the parties, whether or not arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, shall be resolved by binding arbitration before a sole, neutral arbitrator (for claims of $100,000 or less) or a panel of three (3) neutral arbitrators (for claims in excess of $100,000). The arbitration shall be administered by FINRA pursuant to FINRA's Customer Code of Arbitration Procedure. The arbitration shall exclusively be governed by the Federal Arbitration Act, 9 USC § 1-16, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof. This clause shall not preclude the parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction or from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction. The parties shall make reasonable efforts prior to submitting any claim or dispute to arbitration to resolve the matters through mediation. Arbitration proceedings held pursuant to this Agreement shall be conducted at a location determined by the Director of the Office of Dispute Resolution at FINRA. The arbitration panel will determine what amount and portion of the hearing session fees shall be paid by each of the parties.

**31. Severability**
If any court, arbitration panel, other tribunal, regulatory or self-regulatory agency or body, shall deem any provision or condition of this Agreement invalid or unenforceable, such invalidity or unenforceability shall adhere only to such provision or condition. The validity of the remaining provisions and conditions shall not be affected thereby and this Agreement shall be carried out as if any such invalid or unenforceable provision or conditions were not contained herein.

**32. Headings Are Descriptive**
The heading of each provision hereof is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.

**33. Scope And Transferability**
This Agreement shall cover individually and collectively all Accounts which you may open or reopen with tastytrade or Accounts opened with tastytrade that you guarantee and shall insure to the benefit of the Firm's successors whether by merger, consolidation or otherwise, and assigns, and tastytrade may transfer your Accounts to the Firm's successors and assigns, and this Agreement shall be binding upon your heirs, executors, administrators, successors and assigns.

You agree that your continued use of the Account will constitute your acceptance of future Agreements and the terms contained therein.

This Agreement contains a predispute arbitration clause. You acknowledge that you have read and understand and agree to be bound by such predispute arbitration clause.

By electronically signing you acknowledge that you have received, read, and understand tastytrade's Customer Agreement and agree to the provisions contained herein. Furthermore, you understand that you are providing tastytrade with a legally binding electronic signature, just as if you had manually signed a hardcopy of the Agreement.

**34. Governing Law**

This Agreement and any claims and disputes between the parties shall be governed by and subject to the internal laws (exclusive of the conflicts of law provisions) and decisions of the courts of the State of Illinois.

**35. Entire Agreement**

This Agreement and all other Agreements governing your tastytrade Securities and Futures Accounts contain the entire understanding between you, tastytrade, and Apex with respect to the subject matter here of and there of, and shall not be modified by you except in writing signed by you and an authorized Officer of tastytrade or Apex, as applicable. tastytrade may amend this Agreement, which amendment shall be binding on you, and post the updated version on its website. Any material change will be sent to your attention, which includes electronic delivery.

Customer Signature:______________________________ Date:____________

Joint Customer Signature:______________________________ Date:____________

# EXHIBIT A2

**tastytrade, Inc. Futures Customer Agreement and Acknowledgements**

2023

**DESCRIPTION:**

Fourteen-page agreement between Jaison Francisco, tastytrade, Inc. (as Introducing Broker), and Apex Clearing Corporation (as Futures Commission Merchant) setting forth terms and conditions for futures trading accounts. The agreement covers: commodity interests trading, applicable rules and regulations, customer representations and obligations, margin requirements, position limits, electronic trading systems, risk disclosures, arbitration requirements, anti-money laundering compliance, and includes a separate Arbitration Agreement. Document establishes the framework for trading futures contracts and options on futures through tastytrade's brokerage services.

**AUTHENTICITY:**

I certify that the attached document is a true and correct copy obtained from Tastytrade.

Jaison Francisco, Plaintiff
August 30, 2025

tastytrade

## Futures Customer Agreement and Acknowledgements

This tastytrade Futures Customer Agreement ("Futures Agreement") sets forth the terms and conditions pursuant to which tastytrade, Inc. ("tastytrade" or the "Firm"), a registered Introducing Broker ("IB") with the Commodity Futures Trading Commissions ("CFTC"), will govern all of your accounts for trading futures (collectively, the "Futures Account") that you own either individually or jointly with others ("You", "Customer") and that tastytrade introduces to Apex Clearing Corporation ("Apex"), a registered Futures Commission Merchant ("FCM"). tastytrade will act as your broker in the purchase or sale of futures contracts and options on futures (collectively, the "Commodity Interests") in the Futures Account.

### 1. Applicable Rules And Regulations

Your tastytrade Futures Account and any transactions you make are subject to the Firm's trading rules and policies, the rules and policies of the FCM, any execution brokers, securities and futures regulatory authorities (Financial Industry Regulatory Authority ("FINRA"), Securities Exchange Commission ("SEC"), National Futures Association ("NFA"), and CFTC), the Commodity Exchange Act, futures exchanges, futures contracts, markets, and all applicable federal, state, and local laws, regulations and rules (collectively, "Applicable Rules and Regulations"). tastytrade's website (whose domain name is registered as www.tastytrade.com) and brokerage services are not intended for persons who are under eighteen (18) years of age, persons who do not have the capacity to enter into this Futures Agreement, persons of any jurisdiction where tastytrade is not authorized to do business or where such products and other services offered by the Firm would be contrary to the securities regulations, futures regulations or other local laws and regulations of that jurisdiction.

tastytrade shall not be liable to you as a result of any action taken by the Firm or its officers, directors, employees, agents, and affiliates to comply with any Applicable Rules and Regulations.

### 2. Customer Representations

You represent, warrant, and agree that you have the legal authority and full power to enter into this Futures Agreement, to open and maintain Futures Accounts, to effect transactions in Commodity Interests through the use of tastytrade's brokerage services, and that any such transactions do not and will not violate any Applicable Rules and Regulations, or any judgment, decree, order, or agreement to which you or your property is subject. In the event that you direct tastytrade to execute block trades and tastytrade expressly accepts such order, you represent and agree that you are an eligible contract participant as defined by the Commodity Exchange Act ("CEA") and the CFTC.

You represent, warrant, and agree that all decisions relating to your investments or trading activity will be made by you, your duly authorized representative, or any person authorized on the Futures Account. You acknowledge that tastytrade is under no obligation to inquire as to the authority or propriety of any instructions given to the Firm and that the Firm shall be entitled to rely upon any instructions without inquiry or investigation, including instructions with respect to the disbursement of funds and the transfer of Commodity Interests from you or any person authorized on the Futures Account. You acknowledge and agree that tastytrade is not responsible for determining the validity of any status, capacity, or appropriateness of any person authorized on the Futures Account.

You agree to be bound by any oral, written, or electronic instructions which tastytrade believes, in good faith, to have been given by you or any authorized person on the Futures Account, including, but not limited to, any individual identified in writing by you to tastytrade as authorized to act on your behalf. You acknowledge and agree that you are exercising your own judgment and decision with respect to any instructions given to tastytrade regarding transactions to be executed for the Futures Account with the understanding that the Firm makes no representation or warranty as to the value, merits, or suitability of any order placed or transaction you may undertake.

You represent, warrant, and agree that you are under no legal disability which would prevent you from trading in Commodity Interests or entering into this Futures Agreement, and that all of the information contained in your Futures Account Application and all information already on record with tastytrade and Apex is true, complete, and correct as of the date hereof. You further represent, warrant, and agree that you are not an employee or a member of any exchange (nor of any corporation of which any exchange owns a majority of the

capital stock), an employee of a firm registered on any exchange, an associated person, general partner, employee, or otherwise associated with another FCM or IB under CFTC Regulation 155.3(c), or if you are so employed that a written consent of your employer will promptly be provided to tastytrade in order to maintain a Futures Account.

You agree to accept communications from tastytrade and any FCM the Firm employs at your primary postal address and/or email address on record, or at other such addresses that you may hereafter give the Firm consent to keep on record. You understand and acknowledge that all communications sent to recorded addresses - postal and/or email addresses - shall be deemed to be given to you personally, whether actually received by you or not.

You represent, warrant, and agree that you will promptly notify tastytrade in writing of any changes to your personal information, contact information, financial information, employment information, investment objective, or any change in circumstances which would affect the representations and information given to the Firm and/or cause such representations or information to be incorrect, or which would in any way affect your ability to comply with the terms of this Futures Agreement. You further agree that tastytrade can rely on the accuracy of the information you provide.

You agree that this Futures Agreement is binding on and enforceable against you in accordance with its terms.

**3. Futures Trading Risks**

You acknowledge that the risk of loss in trading Commodity Interests can be substantial. You may sustain a total loss of your initial margin funds and any additional funds that you deposit to establish or maintain a position. In addition, market conditions may be such that your Futures Account can incur a negative balance. In this event, you will be liable for any deficit in your Futures Account. You should also be aware that the exercise of a long option contract or the assignment of a short option contract will result in a futures position.

Furthermore, you acknowledge you should study futures trading and consider all of your financial obligations in determining whether the trading of Commodity Interests is appropriate for you. Since the risk factor is high, only genuine "risk funds" (i.e. funds you are able to lose) should be used.

You acknowledge that all transactions effected for your Futures Account and all fluctuations in the market prices of Commodity Interests or other property carried in your Futures Account are at your risk, and you shall be solely liable for such risks under all circumstances. You acknowledge that you are willing and financially able to sustain any losses resulting from you or any authorized person's transactions in Commodity Interests in your Futures Account, and you agree to honor your absolute obligation to pay tastytrade the amount of any such losses.

Trading in Commodity Interests involves a high degree of risk and is not suitable for all investors. You warrant and represent that you are fully aware of the risks inherent in trading Commodity Interests, and you agree that you are solely responsible for determining that such trading in Commodity Interests is suitable for you in light of such factors, including, but not limited to, your investment objective, financial circumstances, investment experience and knowledge. Furthermore, you acknowledge and agree that you are prepared financially to undertake the risks associated with such trading, which may include a total loss of premium and transaction costs, and losses which may exceed the total value of your Futures Account.

**4. Trading In Your Futures Account**

You acknowledge and agree that you are authorizing tastytrade to effect purchase and sale transactions in Commodity Interests upon the Firm's receipt of your oral, written, or electronic instructions. Further, you acknowledge and agree that you are authorizing tastytrade to employ any clearing broker, executing broker, or floor broker, as your agents in facilitating the execution, clearing, carrying, delivery, and/or settlement of any such transactions. You acknowledge that under no circumstances is tastytrade responsible for an executing broker's or floor broker's inability to execute orders. Furthermore, tastytrade shall never be responsible for any action or inaction for any executing broker or floor broker that you select.

tastytrade may route for execution any transaction authorized by you to one or more exchanges, designated contract markets, boards of trade, associations, electronic communications networks or other markets where such business is then transacted, and such routing shall be in tastytrade's sole discretion. You understand that if tastytrade believes that execution or attempted execution of any of your orders may breach any Applicable Rules and Regulations, including, but not limited to, NFA, CFTC, CME, or any other Futures Exchange Rules or Firm policies,

tastytrade may, in its sole discretion and without prior notice to you, delay, refuse, or reject to execute any purchase or sale order for your Futures Account at any time. Furthermore, you acknowledge that tastytrade may place restrictions on your Futures Account, cancel any outstanding order, liquidate your positions, close out your Futures Account, in whole or in part, or close out any commitment made on behalf of you for the protection of the Firm.

Your transactions shall be subject to the constitution, by-laws, rules, regulations, customs, and usages of the exchange or market where executed, including any clearing house it may have, in addition to any applicable Federal or State law, including, but not limited to, the provisions of the Commodity Exchange Act, as amended, and the rules and regulations thereunder (collectively, "Applicable Law"). tastytrade shall not be liable to you as a result of any action taken or inaction by the Firm or its agents to comply with any Applicable Law.

You acknowledge and agree that tastytrade has the right to limit the size and number of open contracts (net or gross) held in your Futures Account, refuse the acceptance of orders for new positions, and/or require you to reduce open positions at any time in its sole discretion.

You acknowledge and agree that tastytrade has no fiduciary obligations to you, and the duties and obligations of the Firm to you are limited to those expressly set forth in this Futures Agreement. tastytrade is acting solely in the capacity as your IB in accordance with the terms of this Futures Agreement and is not otherwise acting as an agent or a fiduciary to you. Furthermore, the Firm has no discretionary authority or control over your Futures Account.

**5. Customer Obligations**

You agree to promptly review upon receipt all futures account statements, trade confirmations, reports of the execution of orders for accuracy. You acknowledge that it is your sole responsibility and agree to promptly notify tastytrade if such documents appear to be inaccurate. Notwithstanding the foregoing, if you are over credited with funds or Commodity Interests, you agree to promptly return such funds or Commodity Interests upon your discovery of the error or as requested by tastytrade.

You agree to promptly pay upon demand, or upon settlement date when applicable, any and all outstanding debit balance, obligation, liability or other indebtedness (collectively, "Obligations") due to tastytrade. You acknowledge that debit balances in your Futures Account may be charged interest in accordance with tastytrade's then-current interest rate schedule for debit balances. You agree that you will be liable to tastytrade for any deficiency remaining in your Futures Account in the event of a termination or liquidation. You agree to pay when due, tastytrade's charges for commission at the rates established by the Firm in addition to related fees and charges as a result of, or related to, the transactions effected under this Futures Agreement, and for other services offered and accepted in connection with your Futures Account.

You agree to promptly pay or reimburse tastytrade, as incurred, the reasonable costs and expenses for enforcement or collection of any debit balance or Obligations, including, but not limited to, attorneys' fees and expenses, and any unpaid deficiency in your Futures Account. You acknowledge that tastytrade may accept a lesser amount than due, which will not affect the Firm's right to later recover the remaining balance, or tastytrade may demand, in its sole discretion, security for any of your obligations in lieu of requiring the immediate discharge of any of your obligations.

To execute opening purchase or sale orders, tastytrade generally requires that your Futures Account have funds available equal to the overnight margin requirement of the Commodity Interests. You acknowledge that you can sustain significant risks when you hold Commodity Interests overnight, such as, but not limited to, availability of markets, trading systems, and inherent market risk.

If applicable, you agree to promptly provide tastytrade copies of your latest audited financials and any such other financial or other information as the Firm may reasonably request.

**6. Bona Fide Hedging**

Pursuant to CFR § 151.5, you acknowledge that tastytrade does not open or accept Futures Accounts of bona fide hedgers. You represent that you are not a bona fide hedger, generally understood to be one who is a commodity producer, merchant, or end-user and uses the futures markets to price their goods efficiently or to manage their price risks by bona fide hedging, which you agree not to engage in and understand to be the sales or purchases of futures contracts to offset purchases or sales of the same cash commodity.

**7. Margins**

tastytrade shall set the margin requirements and reserves the right, and without prior notice to you, to increase such margin requirements and to limit the number of positions you may maintain or acquire through tastytrade. You agree that you will at all times maintain collateral and margin for all Accounts required by the Firm in its sole discretion or required by Applicable Law. You agree to promptly meet all margin and maintenance calls, and to be liable for the losses incurred on all of your trades, regardless of whether sufficient margin was posted at the time the trade was ordered. You acknowledge that tastytrade is not obligated to request additional Commodity Interests or other property for margin purposes in the event your margin Account falls below minimum margin requirements, notify you of such deficiency, or allow you time to deposit additional securities or other property.

**8. Liquidation of Positions**

You acknowledge that if your Futures Account is under-margined or if tastytrade determines, in its sole discretion, that your Futures Account is otherwise insecure with respect to your willingness or ability to fulfill your obligations hereunder, tastytrade reserves the right to offset any of your open positions in Commodity Interests, without prior notice to you, so as to eliminate such margin deficiency or insecurity. In the event of such margin deficiency or insecurity, you agree that you will remain liable to tastytrade for any loss or debit balance that results, regardless of whether tastytrade has adhered to margin or other rules of any contract market, or any other term of this Futures Agreement. You agree that any purchase or sale order in Commodity Interests for your Futures Account inadvertently accepted by tastytrade without sufficient funds will be subject to liquidation (in the case of a purchase order) or subject to buy-in (in the case of a sell order) at tastytrade's discretion and at your expense.

You acknowledge that you hereby authorize tastytrade, without prior notice and in its sole discretion, to liquidate any assets in a Securities Account of yours introduced by tastytrade and held at Apex to eliminate such margin deficiency or insecurity to the extent permitted by Applicable Law. You acknowledge tastytrade's right to offset, if deemed appropriate in its sole discretion, includes the right to buy and/or sell any and all related Commodity Interests or other property, including, but not limited to, the use of spreads, straddles, and/or off-exchange transactions in order to attain such necessary liquidation. You understand that a prior request, demand, call, or prior notice of the time and place of such sale or purchase will not be considered a waiver of tastytrade's right to sell or buy without demand or notice herein provided. Furthermore, you acknowledge that you will remain liable for and will immediately pay to tastytrade the amount of any deficiency in any Account of yours introduced by tastytrade and held at Apex resulting from any transactions described above.

**9. Position Limits**

In addition to compliance with any position limits that tastytrade may impose on you, you agree to comply with any applicable position limits that may be established by any FCM the Firm employs, the CFTC, other applicable regulators, the rules of any Exchange or self regulatory organization.

**10. Lien and Security Interest**

You grant the FCM a first lien and security interest in all monies, open positions in Commodity Interests, documents representing title to commodities, and any other property of yours (regardless whether individually or jointly owned with others) held by the FCM now or in the future in your Futures Account or otherwise in the FCM's possession or control for any purpose, including, but not limited to, safekeeping (collectively, the "Collateral"), to secure payment and discharge your obligations to the FCM or any affiliate of the FCM, which Collateral is subject to the general lien of, and right of set-off by, the FCM for any and all such obligations.

Except as prohibited by Applicable Law, all Collateral now or hereafter introduced by tastytrade and held or carried by the FCM for you may, from time to time, without notice to you, be pledged, hypothecated, loaned, or invested by the FCM or with others separately or with any other property.

**11. Auto Sweep and Transfers**

You understand that tastytrade requires you to open a Securities Account introduced by the Firm to Apex in order to open and maintain a Futures Account. You acknowledge and agree that if available cash is held in your Futures Account at the end of the trading day, such available cash is automatically swept from the Futures Account to your Securities Account held at Apex. You acknowledge that regardless of where your available cash is held, applicable SEC and CFTC rules require proper segregation of your and other customers' assets from tastytrade's assets and Apex's assets. You further acknowledge that transferring available cash from your Futures Account to your Securities Account will result in you not receiving preferential treatment afforded for funds held in a futures account pursuant to Part 190 of the CFTC regulations and the U.S. Bankruptcy Code. Funds held in a securities account for the purpose of purchasing securities or held in a portfolio margin account carried as a securities account are protected by the Securities Investor Protection Corporation ("SIPC"). tastytrade is a member of SIPC. You should refer to tastytrade's Securities Customer Agreement or the SIPC website directly (http://www.sipc.org) for more information regarding SIPC coverage.

As permitted by Applicable Rules, you agree that tastytrade may, in its sole discretion, and without prior notice to you, transfer excess funds or collateral between your Securities Accounts and Futures Accounts in such amount as tastytrade determines may reasonably be required to avoid margin calls or to reduce or satisfy any deficit. You acknowledge that funds will not be credited to your Futures Account until the funds are actually transferred. However, tastytrade is not obligated to do so.

You acknowledge that if you are recognized as a pattern day trader, defined as any trader who executes four or more "day trades" (a securities position that is opened and closed on the same trading day) within a five (5) business day period, your Securities Accounts must have a minimum equity of $25,000 at the start of and maintained throughout any day that you day trade. **You understand and agree that funds held in your Futures Account will not count towards the $25,000 minimum equity requirement and will not be included in your securities day trade buying power.**

**12. Electronic Trading And Order Routing Systems**

You acknowledge that you bear all risk associated with your orders, regardless if they are placed through tastytrade's trading platform, through a tastytrade representative or otherwise. You acknowledge that you are solely responsible for all orders (whether successfully entered or attempted to be entered) that are associated with your unique customer identifiers, including, but not limited to, your Futures Account number, customer identification number, or your unique user login credentials. You understand that tastytrade's acceptance of an order for placement, which includes, but is not limited to, Firm representatives, the tastytrade platform, email, chat or phone, does not constitute a guarantee of any kind that your order will be placed as all orders are subject to your Futures Account maintaining sufficient margin to support the resulting position. You acknowledge that tastytrade and the FCM reserve the right to set and/or change, without prior notice to you, minimum equity amounts for your Futures Account. You hereby acknowledge your responsibility to do the following:

(i) to be aware of current margin requirements with respect to all trading activity; and
(ii) to meet all initial and maintenance margin requirements; and
(iii) to be liable for the losses incurred on all of your trades, regardless of whether sufficient margin was posted at the time the trade was ordered.

You acknowledge that under no circumstances, including, but not limited to, electronic or mechanical failure, system failure or delay, acts of God, terrorism, or any other reason, shall tastytrade be liable or have direct responsibility to you in the event that any of the following should occur:

(i) you are unable to access or use the tastytrade website, trading software,roapplications (web, desktop, mobile) to place an order, view account information, or otherwise engage in Commodity Interests related activities;
(ii) any Exchange or clearing corporation endures any mechanical, electrical or other failure, delay, interruption, or congestion regardless of whether or not any of the aforementioned results in a failure to maintain an orderly market, execute a transaction, perform clearance, or confirm transactions in Commodity Interests for your Futures Account or otherwise.

You acknowledge that tastytrade is not responsible for providing nor guarantees full and complete access to all electronic markets, under no circumstances will be liable for losses that may result for the inability to access markets due to any aforementioned restrictions or otherwise.

You acknowledge that it is your sole responsibility to cancel any and all unexecuted day orders that could normally be executed during regular market hours when access cannot be provided by tastytrade.

You acknowledge that electronic trading and order routing systems differ from traditional open outcry pit trading and manual order routing methods. Transactions using an electronic system are subject to the rules and regulations and requirements of the exchange(s) offering the system and/or listing the contract and service providers of such electronic systems, and such rules and requirements may change from time to time. You further acknowledge that trading or routing orders through electronic systems may present risk factors, including, but not limited to, system access, varying response times, and security. In the case of Internet-based systems, there may be additional types of risks related to Internet service providers and the receipt and monitoring of electronic mail.

You acknowledge some contracts offered on an electronic trading system may be traded electronically and through open outcry during the same trading hours. You agree it is your responsibility to review the rules and regulations of the Exchange offering the system and/or listing the contract to determine how order that do not designate a particular process will be executed.

**13. Electronic Order Execution Requests And Communication**

You agree to the following terms and conditions with respect to all electronic communications in which you communicate a request to an agent of tastytrade and any related information pertaining to such request. Requests may include instructions to execute an unsolicited order in your Futures Account via phone or through the Firm's live support chat feature. The Firm will only accept orders via email under certain circumstances. You acknowledge that electronic or phone requests communicated to the Firm will be handled on a best efforts basis. Additionally, these terms and conditions require you to acknowledge your responsibility to protect your sensitive account information as well as your responsibility to routinely monitor your Futures Account information and activity. Any orders communicated to tastytrade's platform with your unique user login credentials will be considered to have been sent and authorized by you.

(i) You agree you will not transmit orders in Commodity Interests to tastytrade using electronic communications other than those designated by tastytrade for the express purpose of placing such orders.
(ii) You agree that it is your responsibility to promptly notify tastytrade if you receive a trade confirmation for an order that you did not place.
(iii) tastytrade, in its sole discretion, may decline to execute any of your orders for a variety of reasons, including, but not limited to, size of the order, market conditions, violations of your Securities Agreement(s) and/or Futures Agreement(s) with the Firm, inadequate account equity, financial insecurity, insufficient margin, risk considerations, suitability thresholds, Exchange restrictions or trading halts, and other matters or market conditions that affect trading.
(iv) You agree that you are responsible for the monitoring of all of your orders entered into tastytrade's platform or via tastytrade's electronic communication system until such order is accompanied by an official confirmation or cancellation given by tastytrade or the FCM.
(v) You agree to be bound by the actual order execution transacted on the Exchange that resulted from the entry of your order for your Futures Account.
(vi) If tastytrade confirms a Futures Account trade or other activity in error and you delay reporting such error, the Firm reserves the right to remove the trade or activity from your Futures Account or require you to accept the trade or activity at tastytrade and/or the FCM's discretion.
(vii) You agree to provide tastytrade with your primary email address and to promptly update your account profile with any changes to your email address or any other relevant information that is pertinent to your account status and/or the Firm's ability to communicate with you.
(viii) You agree to protect your sensitive account information, including, but not limited to, your password, username, other login credentials.
(ix) You agree to not give your login credentials or make them easily accessible to a minor.

**14. Exercises, Assignments, and Deliveries**

You understand that exchanges and their clearing houses have established exercise requirements for the tender of exercise instructions and that options will become worthless if you do not deliver instructions by such expiration times. You agree to contact tastytrade by 3:30pm Central Time on the last trading day in the case of long and short options, and you agree to deliver to tastytrade sufficient funds required in connection with the exercise. If you do not deliver specific instructions to liquidate, exercise, or allow the expiration of such options, or such necessary funds are not received by tastytrade prior to the expiration of the option, the Firm may permit an option to expire. Under no circumstances is the Firm or FCM obligated to exercise the option contract on your behalf and you will hold the Firm and FCM harmless from any damages or loss that may result at that time or any time thereafter. If you do not deliver timely instructions to the Firm, you hereby agree to waive any and all claims for damage or loss you might have against tastytrade arising out of the fact that an option was or was not exercised.

You understand that certain exchanges and clearing firms automatically exercise some "in-the-money" options unless instructed otherwise. You acknowledge that it is your full responsibility to take action either to exercise a valuable option contract prior to its expiration or to prevent the automatic exercise of an option, except upon your express instructions.

You acknowledge that the FCM, or its agents, randomly assign exercise notices to customers, and that short option positions may be subject to assignment at any time, including positions that are established on the same day that exercises are assigned, and that exercise assignment notices are allocated randomly among all Customers' short option positions which are subject to exercise. This is accomplished by a manual procedure, which randomly selects from among all customer short positions, including positions established on the day of assignment, those contracts that are subject to exercise. All short option positions are liable for assignment at any time. With regard to transactions in Commodity Interests, liquidating instructions on open positions in a current delivery month must be given to the Firm at least five (5) business days prior to the first notice day in the case of long positions, and at least five (5) business days prior to the last trading day in the case of short positions.

tastytrade does not allow for futures contracts to be settled with physical delivery of a commodity nor does tastytrade allow for positions to be held on or after First Notice Day (the first day on which a notice of intent to deliver a commodity in fulfillment of a futures contract can be made by the clearinghouse to a buyer). You are required to close or roll your long positions to the next active month the day before the First Notice Day, and you are required to close or roll your short positions the day before the Last Trading Day (the day on which trading ceases in a futures contract for a particular contract month). If funds, documents, or instructions are not received from you, tastytrade may, without notice to you, close out such positions without additional prior notification. tastytrade shall have no liability to you for any such action. In the event of an error, omission, or out trade discovered on or after the last day of trading, tastytrade will abide by the appropriate Exchange rules for an Alternative Delivery Procedure (ADP).

**15. Commissions & Fees**

You agree to pay tastytrade's brokerage commissions, transaction, processing, clearing fees, market data fees, other fees, and taxes as they exist from time to time and apply to your Futures Account. You acknowledge that tastytrade reserves the right to change its commissions and fees in its sole discretion separate from any changes that the FCM makes to its fees. tastytrade will make relevant information about such commissions and fees, including any update that the FCM provides that is applicable to tastytrade's customers' Securities and Futures Accounts, available on the Firm's website at www.tastytrade.com. Furthermore, you acknowledge that tastytrade may deduct all fees directly from your Securities or Futures Account and your execution of this Futures Agreement serves as your authorization for the Firm to do so. You understand that profit and loss calculations on the trading platform or your account statements may not include commissions, fees or other transaction costs, and do not reflect the impact such costs will have on actual results.

**16. Market Data**

tastytrade obtains market data from exchanges, markets, associations, electronic communications networks, and from other third-party providers that transmit market data (collectively, "Market Data Providers"). You acknowledge that the market data is provided "as is" and on an "as available" basis. There is no warranty of any kind, express or implied, regarding the market data. The market data is believed to be reliable, but neither tastytrade nor Market Data Providers can guarantee the accuracy, completeness, timeliness or correct sequencing of the market data. Therefore, you agree that tastytrade may correct any execution reported to you that was based on inaccurate market data, unbeknownst to tastytrade, provided to the Firm by Market Data Providers. You understand that you are responsible for any corrected price or size of the execution of your order that reflects the actual execution of your order pursuant to the Exchange's rules where your order was routed for execution. Furthermore, you agree to not hold tastytrade or Market Data Providers liable for interruptions in the availability of market data or your access to market data. You agree to hold harmless and indemnify tastytrade, its officers, directors, employees, agents and affiliates and those officers, directors, employees, agents and affiliates of the Market Data Providers from any liability with respect to interruptions in the availability of market data, your access to market data, lost profits, trading losses or any other damages resulting from inaccurate, defective or unavailable market data. To the extent a tribunal from a component jurisdiction determines that tastytrade should be held liable for any such losses, you agree that tastytrade's liability will not exceed the amount you paid for the receipt of the market data. You acknowledge that the Market Data Providers have a proprietary interest in their market data. You may not sell, market, repurpose or redistribute the market data in any way. You acknowledge that it is solely your responsibility to ensure your employment information and use of market data on record is current and accurate at all times, and you agree to pay all applicable fees charged to as result of you not properly disclosing your employment information and use of market data as tastytrade reserves the right to do so.

**17. Limitation Of Liability**

You agree and understand that there may be delays or interruptions in the use of tastytrade's systems. Furthermore, you agree and understand that tastytrade's systems are being provided "as is" and "as available" and there is no implied or express warranty, including implied warranties of merchantability, non-infringement, or fitness for a particular purpose, and implied warranties arising from course of conduct, course of dealings, regarding tastytrade's systems. tastytrade, its affiliates, Third-Party Services, Market Data Providers, and their respective licensors, officers, directors, employees, distributors, or agents make no representations with respect to the system and expressly disclaim all warranties. You agree and understand that in no event will tastytrade, its affiliates, Third-Party Services, Market Data Providers, or their respective licensors, employees, distributors, or agents be liable to you or anyone else for any loss or damage incurred with respect to your Futures Account, including consequential, incidental, punitive, lost profits or trading losses, or loss of use of services, or special or indirect damages, including, but without limitation, that result from inconvenience, delay or loss of the use of any of tastytrade's' systems. You acknowledge and agree that neither tastytrade nor any Market Data Provider make any representations, warranties, or other guarantees as to the accuracy or timeliness of any market data or to the present or future value or suitability of any transaction involving a particular Commodity Interest, security, product, or any other investment. Furthermore, you agree that neither tastytrade, its officers, directors, affiliates, and/or employees shall have any responsibility for your compliance with any laws, rules, or regulations governing your conduct.

You acknowledge and agree that tastytrade shall not have any liability to you for delays in the transmission, clearance, or confirmation of your orders due to mechanical, electronic, or computer failure or market traffic or illiquidity, other such causes beyond the Firm's control. tastytrade shall not be liable for any third party's actions, including, but not limited to, improper execution, clearance, or confirmation of your orders. Furthermore, tastytrade shall not be liable for your use of or reliance on information provided directly or indirectly through the Firm's website, or your use of third party websites or other resources linked to or otherwise incorporated into or referenced within the Firm's website.

You agree to hold tastytrade harmless from any losses or damages due to language barriers, and you acknowledge that tastytrade only guarantees customer and account support as well as its brokerage services in English.

**18. Indemnification**

You hereby, in both personal and representative capacities, agree to hold harmless, defend, and indemnify tastytrade and its officers, directors, employees, agents, affiliates, and Third-Party Providers and their respective officers, directors, employees, agents, and representatives from any and all liabilities, losses, costs, judgments, penalties, claims, actions, damages, expenses, and attorney's fees and disbursements (collectively, "Losses") resulting or arising directly or indirectly from your use of your Futures Account and services provided by tastytrade and/or the FCM, including, but not limited to:

(i) as a result of your acts or omissions;
(ii) as a result of another Account Owner's acts or omissions;
(iii) as a result of any losses or damages you may suffer with respect to your Futures Account;
(iv) as a result of any breach by you of any of the Futures Agreement's covenants, obligations, representations, acknowledgments or warranties;
(v) as a result of the provision of any services provided to you; or
(vi) as a result of any actions taken or inactions by tastytrade as allowed by this Futures Agreement and all binding agreements that you have entered into, including future or revised agreements you may enter into, with respect to your Futures Account(s) ownership, except for losses resulting from tastytrade's gross negligence or willful misconduct.

**19. Extraordinary**

You acknowledge that tastytrade is not responsible and you agree to not hold tastytrade liable for the losses caused, directly or indirectly, by conditions beyond the Firm's control, including, but not limited to, government restrictions, amendments to exchange or market rules, interruptions of communications or data processing services, market volatility, unusual activity, trading halts, trading restrictions or disruptions in orderly trading on any exchange or market.

**20. Consent To Electronic Delivery**

You acknowledge that by accepting this Futures Agreement that you are consenting to electronic delivery of documents and communications, and you authorize tastytrade and any FCM the Firm employs to deliver documents and communications by the following means:

(i) emailing to the email address specified by you and on record with the Firm and the FCM;
(ii) posting a communication on the website or making available, either on the Firm's website or sent via email, links to other sites on the Internet where the communication can be read and printed;
(iii) sending you an email or other notice that directs you to an address on the Internet or a place within the website where the communication is posted and from which it can be read and printed.

You take full responsibility to protect your sensitive account information as well as your responsibility to routinely monitor your account information and activity. You agree to notify tastytrade if your login information or any Securities or Futures Account numbers have been lost, stolen, or compromised, or if there has been unauthorized access to any of your Securities or Futures Accounts.

You agree to provide the Firm with your primary email address and to promptly update your account profile with any changes to your email address or any other relevant information that is pertinent to your account status and/or the Firm's ability to communicate with you.

## 21. Electronic Signature

You understand that your electronic signature to sign documents is legally binding in the same manner as if you manually signed such documents. Additionally, you understand that the use of an electronic version of these documents fully satisfies any requirement that they be provided to you in writing. You understand that when you electronically sign a document, you are representing that you have read, understand, have the ability to access and retain a record of the document, and agree to be bound to the terms and conditions contained thereon. It is your responsibility to review the website at least periodically at www.tastytrade.com for changes or modifications.

## 22. Notification of Recording

You acknowledge that tastytrade reserves the right to monitor or record telephone conversations with all of its customers. Your execution of this Futures Agreement evidences your consent to such monitoring or recording of your conversations between you and tastytrade's employees, representatives, officers, directors, partners or agents by means of electronic telephone recording equipment. You understand that the Firm may, in its sole and absolute discretion, tape record conversations without further notice or disclosure, without the use of an automatic tone-warning device, and without assuming responsibility to make or retain such tape recordings. Furthermore, you acknowledge and agree that such recordings of telephone conversations may be used by the Firm as evidence in any dispute between you and the Firm. You agree that you will not record any telephone conversations with tastytrade's employees, representatives, officers, directors, partners or agents without the express written consent of tastytrade and the consent from any aforementioned tastytrade individual engaged in the conversation.

## 23. Foreign Jurisdictions

Due to foreign regulations, tastytrade may only maintain Futures Accounts for customers residing outside of the United States in certain foreign jurisdictions. You agree that if tastytrade determines that it cannot maintain your Futures Account based on your residence in a foreign jurisdiction that tastytrade reserves the right to close your account without prior notice.

You acknowledge that this Futures Agreement will be considered to be a contract made in the United States and all services considered to be performed in the United States. The tastytrade website should not be considered a solicitation for or offering of any investment product (Securities or Commodity Interests) or service outside of the United States.

## 24. Foreign Currency Conversions

You agree to make all deposits in U.S. dollars, except as otherwise permitted by tastytrade and Apex. Unless another currency is designated in the confirmation for such transaction, all margin deposits for such futures contract and any debit or credit made in the Futures Account as a result of liquidating such a contract shall be in U.S. dollars at a rate of exchange determined by the Firm in its sole discretion on the basis of the then prevailing rates of exchange for such foreign currency. If you place any order that would be settled in a currency other than U.S. dollars or otherwise instruct tastytrade to enter into any transaction to be denominated in a currency other than U.S. dollars, then: (a) you shall be deemed to have authorized the Firm to convert funds to the applicable currency sufficient to meet the applicable margin requirement; (b) the exchange rate for such conversion shall be determined by tastytrade on the basis of then prevailing rates of exchange and tastytrade may directly pass through a fee for such conversion; and (c) any profit or loss arising as a result of a fluctuation in the exchange rate affecting such currency shall be for the Futures Account and at your risk. In no event shall tastytrade be required to effect, or be responsible for, the conversion of funds in anticipation of changes in prevailing rates of exchange.

**25. Proprietary Information**

You agree not to reproduce, retransmit, disseminate, sell, distribute, publish, broadcast, circulate or otherwise exploit tastytrade's proprietary systems or any content contained therein in any manner without tastytrade's express written consent. You agree to comply with reasonable written requests by the Firm to protect tastytrade's system and respective rights therein.

tastytrade hereby grants you a revocable, non-transferable, non-exclusive, limited license to use tastytrade's systems, applications, and website (collectively "Proprietary Property") for the purpose of trade routing and execution and management of your Futures Account in accordance with the terms and conditions of this Futures Agreement. All copyright and other intellectual property rights, including, but not limited to, rights to patents, copyrights and/or trademarks shall be the sole property of tastytrade, Inc. You agree not to disclose any aspect of tastytrade's Proprietary Property or confidential information of any sort that may be received as a result of the use of tastytrade's Proprietary Property. You agree not to use any of tastytrade's Proprietary Property or any information disseminated by tastytrade's Proprietary Property for any illegal purpose, or other than strictly in accordance with the End User License Agreement between you and tastytrade.

You agree not to copy, modify, reverse engineer, decompile, adapt or reduce to readable form or create a derivate product of any aspect of tastytrade's Proprietary Property or any content contained therein. You agree and understand that all subsequent updates, replacements, enhancements, revisions, additions, conversions or the like are subject to this Futures Agreement.

**26. Entity And Trust Accounts**

You represent and warrant the following if you maintain an Entity or Trust Account with tastytrade:

(i) You are authorized to open and maintain the Entity Futures Account on behalf of the Entity identified in the Entity application;

(ii) You are the Trustee of the Trust identified in the Trust application and are authorized to open and maintain the Trust Futures Account on behalf of the Trust; and

(iii) The Entity expressly grants to you or the Trust expressly grants to you the power to engage in any and all Commodity Interests.

For your Entity Futures Account or Trust Futures Account with more than one Account Owner, references to the "Undersigned Customer" shall include each of the Customers identified on the Futures Account application and Futures Account Record. Each Customer acknowledges, represents, certifies, and agrees:

(i) The Entity or Trust expressly authorizes that each Customer is authorized to act independently and without the consent of the other Customer(s);

(ii) Each Customer has consented to each Customer acting independently and without the consent of the other Customer(s) with respect to the Entity or Trust Futures Account, and that such delegation of authority is expressly authorized by the Entity or Trust and Applicable Law, and can be provided promptly to tastytrade upon the Firm's request;

(iii) Each Customer has authority to act on behalf of the Futures Account and tastytrade may rely on and accept instructions from any one Customer;

(iv) That any notice sent to one Customer will constitute notice to all Customers;

(v) That tastytrade reserves the right, in its sole discretion, to require the written, and if requested, notarized, consent of any or all Customers prior to acting upon the instructions of any other Customer; and

(vi) That neither they nor the Entity or Trust impose any obligation upon tastytrade for determining the purpose or origin of any instruction received from any Customer or any payments to or among any Customer.

You acknowledge that by accepting the terms of this Futures Agreement you are certifying and attesting that the Entity or Trust is in good standing and has not been revoked, modified, or amended in any manner which would cause the information you provided in the Entity or Trust Futures Account application to be incorrect. You agree to promptly notify tastytrade in writing of any change that would cause the information represented in your Entity or Trust Futures Account application or its corresponding Futures Account record to be incorrect or incomplete

**27. Individual Account**

If this is Futures Account is an individual account or an Individual Retirement Account, you acknowledge that you are representing that your Futures Account is opened and maintained by an Individual or Sole Proprietorship and no one else has an interest in the Futures Account.

If this is an Individual Retirement Account established under Section 408(a) of the Internal Revenue Code, or if this is a Roth Individual Retirement Account established under Section 408(A) of the Internal Revenue Code (each, an "IRA"), you acknowledge that you are representing that you are the beneficial owner of the IRA and have the authority to do the following:

(i) to provide instructions with respect to the IRA;
(ii) to receive any demands, notices, confirmations, reports, statements, and other communications of any kind;
(iii) to sign any related documents with respect to opening and maintaining the IRA; and
(iv) to deal with the Firm in connection herewith as fully and completely as if the trustee or custodian of the IRA had no interest herein.

**28. Joint Account**

For your Futures Accounts with more than one (1) Account Owner, references to "Customer" shall include each of the Customers identified on the Futures Account application and Futures Account record. Customers understand and agree that the representations, warranties and agreements made herein are made on behalf of all of the joint Futures Account Owners and further agree that each Futures Account Owner (a) is a Customer; (b) has the authority to act on behalf of the Futures Account and tastytrade may rely on and accept instructions from any one Customer; (c) is jointly and severally liable per the terms and obligations of this Futures Agreement.

tastytrade may rely on transfer or other instructions from any one of the Customers in a joint Futures Account, and such instructions shall be binding on each of the Customers. tastytrade may transfer and/or deliver Commodities Interests or other property to, and send confirmations, notices, statements and confirmations of every kind, to any one of the Customers, and such action shall be binding on each of the Customers.

Notwithstanding the foregoing, tastytrade is authorized in the Firm's discretion to require joint action by the joint Futures Account Owners with respect to any matter concerning the joint Futures Account, including, but not limited to, the giving or cancellation of orders and the withdrawal of money or Commodity Interests. Customers hereby acknowledge that tastytrade shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given and shall be under no obligation to see to the applications of any funds so delivered.

For Futures Accounts opened and maintained as Joint Accounts With Rights of Survivorship ("WROS"), Customers agree that in the case of death of any of the joint Futures Account Owners, interest in the entire Futures Account shall vest in the surviving Futures Account Owner(s) under the same terms and conditions of this Futures Agreement and the surviving Futures Account Owner(s) shall promptly provide tastytrade with written notice thereof and provide any documentation reasonably requested by tastytrade and/or Apex in its management of the Futures Account.

**29. Anti-Money Laundering And Customer Identification Program**

To help the government fight the funding of terrorism and money laundering activities, Federal Law requires tastytrade to obtain, verify, and record information that identified each person who opens an account, such as your name, address, date of birth, and identification number. tastytrade reserves the right to collect other information and identifying documents to aid in verifying your identity, such as, but not limited to, a valid, non-expired form of government-issued photo identification (i.e. driver's license or passport). You agree to promptly provide any documents or certifications requested by tastytrade that the Firm believes are necessary or advisable to obtain for anti-money laundering compliance purposes, and that the information you provide is complete and accurate.

Furthermore, you authorize tastytrade to make inquiries to consumer or credit reporting agencies, to contact financial institutions, banks, and/or other third party sources, as the Firm shall deem appropriate, to verify your identity and the information you provided to tastytrade.

The rules set forth by the U.S. Department of Treasury, SEC, Commodities Futures Trading Commission ("CFTC"), FINRA, and the National Futures Association ("NFA") may also require tastytrade to collect additional information such as your net worth, annual income, occupation, employment information, investment experience, investment objectives, and risk tolerance.

tastytrade reserves the right to not open an Account or carry out transactions for you if your identity cannot be verified. If you have an existing Account, tastytrade reserves the right to close the Account at any point in time if your identity cannot be verified as part of tastytrade's ongoing effort to prevent fraud.

**30. Termination**

Your tastytrade Futures Account may be terminated and closed by you, tastytrade, or by the FCM at any time with or without cause or reason. You acknowledge that you must and you agree to provide written notice in the event that you so wish to terminate your Futures Account. You are aware and agree that such closure or termination will not affect any rights or obligations that either you or tastytrade incurred prior to such closure or termination, including any transactions arising before or after termination of the Futures Agreement.

You agree that you will notify tastytrade to liquidate all open Commodity Interest positions in and close your Futures Account if losses in your Futures Account approach the extent at which your lifestyle or that of any of your dependent(s) becomes adversely affected.

**31. Scope And Transferability**

This Futures Agreement shall cover individually and collectively all Futures Accounts which you may open or reopen with tastytrade or Futures Accounts opened with tastytrade that you guarantee and shall insure to the benefit of the Firm's successors whether by merger, consolidation or otherwise, and assigns, and tastytrade may transfer your Futures Accounts to the Firm's successors, assigns, affiliates, and subsidiaries, and this Futures Agreement shall be binding upon your heirs, executors, administrators, successors, assigns.

Your rights and duties hereunder may not be assigned other than with the written consent of tastytrade. You agree that tastytrade may assign this Futures Agreement to another FCM upon notice to you and otherwise in accordance with Applicable Law.

You agree that your continued use of the Futures Account will constitute your acceptance of future Futures Agreements and the terms contained therein. Furthermore, you understand and agree that any modification to this Futures Agreement shall be ineffective to relieve you of your obligations.

You agree that tastytrade shall not be bound by any representation or agreement made by any of its employees or agents that diminishes tastytrade's rights under this Futures Agreement.

**32. Severability**

If any court, arbitration panel, other tribunal, regulatory or self-regulatory agency or body, shall deem any provision or condition of this Futures Agreement invalid or unenforceable, such invalidity or unenforceability shall adhere only to such provision or condition. The validity of the remaining provisions and conditions shall not be affected thereby and this Futures Agreement shall be carried out as if any such invalid or unenforceable provision or conditions were not contained herein.

**33. Headings Are Descriptive**

The heading of each provision hereof is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.

**34. Acknowledgement of Disclosures**

**You acknowledge that trading in Commodity Interests is speculative, involves a high degree of risk, and is appropriate only for persons who can assume risk of loss in excess of their margin deposit.**

**You hereby acknowledge that you received, read, understand, and retained copies of the CFTC Rule 1.55 Risk Disclosure Statement, the CFTC Rule 33.7 Futures Options Disclosure Statement, the Futures and Exchange-Traded Options Risk Disclosure Statement, and all other applicable documents provided to you in conjunction with this Futures Agreement prior to you making the determination that you are suitable to trade futures. You also understand that tastytrade is relying on you to be familiar with any disclosures related to this account that are or may become applicable.**

**35. Governing Law**

This Futures Agreement and any claims and disputes between the parties shall be governed by and subject to the internal laws (exclusive of the conflicts of law provisions) and decisions of the courts of the State of Illinois. No lawsuit, arbitration proceeding, or other claim, regardless of form, arising out of transactions under this Futures Agreement may be brought by you more than one (1) year after the cause of action arose. Provided, however, that any action brought under the provisions of Section 14 of the Commodity Exchange Act may be brought at any time within two (2) years after the cause of action occurs.

By electronically signing you hereby represent and agree that you have received, read, and understand tastytrade's Futures Agreement and agree to the provisions contained herein. Furthermore, You understand that you are providing tastytrade with a legally binding signature, just as if you had manually signed a hardcopy of the Futures Agreement.

**36. Entire Agreement**

This Futures Agreement and all other Agreements governing your tastytrade Futures and Securities Accounts contain the entire understanding between you, tastytrade, and Apex with respect to the subject matter here of and there of, and shall not be modified by you except in writing signed by you and an authorized Officer of tastytrade or Apex, as applicable. tastytrade may amend this Futures Agreement, which amendment shall be binding on you, and post the updated version on its website. Any material change will be sent to your attention, which includes electronic delivery.

Customer Signature:______________________________ Date:____________

Joint Customer Signature:______________________________ Date:____________

**Arbitration Agreement**

By signing this Arbitration Agreement, you agree any controversy or claim arising out of or relating to your Futures Accounts and introduced by tastytrade and held at Apex ("FCM") shall be settled by arbitration, either (1) under the Code of Arbitration of the National Futures Association, or (2) upon the contract market on which the disputed transaction was executed or could have been executed. Any award rendered thereon by the arbitrators, shall be final and binding on each and all of the parties thereto and their personal representatives and judgment may be entered in any court having jurisdiction thereof. At the time you notify either the FCM or tastytrade of your intent to submit a claim to arbitration, or at such time that you are notified of the FCM or tastytrade's intent to submit a claim to arbitration, you will have an opportunity to elect a qualified forum for conducting the proceedings, and will be supplied with a list of qualified organizations. You are required to send notice of your intent to arbitrate by certified mail to the FCM and/or tastytrade at their respective addresses, and the Secretary of the National Futures Association.

THREE (3) FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION ("CFTC") AND ARBITRATION CONDUCTED BY A SELF REGULATORY OR OTHER PRIVATE ORGANIZATION. THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY. BY SIGNING THIS ARBITRATION AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE ARGEEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERLCAIMS WHICH YOU, THE FCM OR TASTYTRADE MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT ("CEA") WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS ARGREEMENT. IF A DISPUTE ARISES, YOU WILL BE NOTIFIED IF THE FCM OR TASTYTRADE INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A CEA VIOLATION IS INVOLVED AND YOU PREFER TO REQUEST SUCH A SECTION 14 REPARATIONS PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION. IF YOU SEEK REPARATION PROCEEDINGS BEFORE THE CFTC AND THE CFTC DECLINES TO INSTITUTE THOSE PROCEEDINGS, OR IF CERTAIN ASPECTS OF THE CLAIM OR GRIEVANCE ARE NOT SUBJECT TO REPARATION PROCEEDINGS, THE CLAIM OR GRIEVANCE, OR PART THEREOF, WILL BE SUBJECT TO THIS ARBITRATION AGREEMENT.

YOU NEED NOT SIGN THIS ARBIRTRATION AGREEMENT TO OPEN A FUTURES AND EXCHANGE-TRADED OPTIONS ACCOUNT WITH THE FCM AND/OR TASTYTRADE. SEE 17 CFR 180.1-180.5.

Customer Signature:______________________________ Date:__________

Joint Customer Signature:______________________________ Date:__________

# EXHIBIT B1

**Bank of America - Plaintiff's $138,100 Deposit to Tastytrade, Inc.**

**DESCRIPTION:**

Bank of America wire transfer confirmation showing Plaintiff's deposit of $138,100 to Tastytrade, Inc. on September 11, 2023.

**AUTHENTICITY:**

I certify that the attached document is a true and correct copy of the Bank of America wire transfer confirmation showing my deposit of $138,100 to Tastytrade, Inc.

Jaison Francisco, Plaintiff
August 30, 2025

## Transaction details

Posting date
**Sep 11, 2023**

Description
**TASTYTRADE INC. DES:ACH ID:XXXXXXXXXX2012 INDN:JAISON FRANCISCO CO ID:XXXXX73990 WEB**

| | |
|---|---|
| Type | **Other Payment** |
| Status | **Cleared** |
| Amount | -$138,100.00 |
| Description | **TASTYTRADE INC. DES:ACH ID:XXXXXXXXXX2012 INDN:JAISON FRANCISCO CO ID:XXXXX73990 WEB** |
| Merchant name | **TASTYTRADE INC.** |
| Transaction category | **Uncategorized: Uncategorized** |

Print transaction details

# EXHIBIT C1

## Tastytrade Tiered New Account Bonus Offer Terms and Conditions

Bonus Promotion

**DESCRIPTION:**

Five-page Terms and Conditions document for Tastytrade's promotional bonus offer. Document sets forth bonus tiers ranging from $100 to $5,000 based on deposit amounts from $5,000 to $1,000,000+. Document states that initial minimum funding amount deposited into a Qualified Account is required to remain in the account for a minimum of twelve (12) months.

**AUTHENTICITY:**

I certify that the attached document is a true and correct copy of the promotional terms and conditions provided by Tastytrade.

Jaison Francisco, Plaintiff
August 30, 2025

# Terms and Conditions

YOUR PARTICIPATION IN THE TIERED NEW ACCOUNT BONUS OFFER ("**PROMOTION**") SERVES AS YOUR WILLFUL ACCEPTANCE OF AND AGREEMENT TO COMPLY WITH THE TERMS AND CONDITIONS OF THIS PROMOTION. DO NOT PARTICIPATE IN THE PROMOTION IF YOU DO NOT AGREE WITH THESE APPLICABLE TERMS & CONDITIONS.

## THE PROMOTION PERIOD

The Promotion begins at 12:00am CT on 05/01/2023 and ends at 11:59pm CT on 03/31/2024 (the "**Promotional Period**"). Sponsor's computer is the official clock for the Promotion.

## ELIGIBILITY

### Qualified Customer and Qualified Accounts

The Promotion is available to (1) all approved new customers (as determined by Tax ID) who fund their tastytrade account with $5,000 USD or more, and (2) existing customers who have never funded any tastytrade account prior to the start of the Promotional Period, and who fund their existing brokerage account with $5,000 USD or more (each, a "**Qualified Account**"). All approved new customers and existing customers must be legal U.S. residents and ages 18+ as of the date of participation. In order to be eligible for this Promotion, approved new customers must include the Referral Code of "**MYNEWBONUS**" in the REFERRAL CODE FIELD when applying for an account, and existing customers must receive an email from Sponsor confirming they are eligible to participate in the Promotion (upon approved new customers entering the Referral Code, or existing customers funding any current account after receiving an email confirmation of eligibility, approved new customers and existing customers shall be referred to herein as a "**Qualified Customer**.") The Promotion is not valid for customers who have any existing, funded tastytrade brokerage account.prior to the start of the Promotional Period. Individual Retirement Accounts (IRA) are not eligible for the Promotion. Only Qualified Customers with Qualified Accounts are eligible for the Cash Bonus. Employees of Sponsor and its affiliates, subsidiaries, divisions, fulfillment and advertising and promotion agencies, their immediate family members (spouse, parent,

child, sibling, and their respective spouses, regardless of where they reside), and those living in the same household of each such individual, whether or not related, are not eligible.

The Promotion is not open to persons who reside in any jurisdiction where tastytrade is not authorized to do business, where its products and services would be contrary to the laws, rules, and regulations governing the securities industry, the futures industry, or where otherwise prohibited under the local laws, rules, and regulations of that jurisdiction. The Promotion is not valid for internal transfers, and is not transferable, saleable, or valid in combination with certain other offers.

**AWARD DETAILS**

The Cash Bonus ("Cash Bonus") will be credited to a Qualified Customer's Qualified Account within two (2) weeks from date of the initial deposit of at least $5,000 USD (the "Funds"). The Funds must be deposited as a single transaction prior to the end of the Promotional Period.

The initially deposited funds will determine the Cash Bonus tier:

| Deposited Funds | Cash Bonus |
|---|---|
| $5,000 - $24,999 | $100 |
| $25,000 - $99,999 | $500 |
| $100,000 - $249,999 | $2,000 |
| $250,000 - $499,999 | $3,000 |
| $500,000 - $999,999 | $4,000 |
| $1,000,000+ | $5,000 |

Each Qualified Customer is limited to a single Cash Bonus. The $500,000+ and $1,000,000+ Deposited Funds levels were added to the program after the beginning of the Promotional Period and the Cash Bonus associated with these amounts will be applied retroactively from deposits made on or after May 1, 2023, if a Qualified Customer's deposited funds qualify for a higher Cash Bonus.

The initial minimum funding amount of $5,000 USD to $1,000,000+ deposited into a Qualified Customer's Qualified Account is required to remain in the Qualified Account for a minimum of twelve (12) months starting the date the Qualified Account meets the

funding minimum ("**Twelve Month Period**"). The value of Cash Bonus the Qualified Customer receives will be credited to its Qualified Account upon deposit, but will be automatically debited out of the Qualified Customer's Qualified Account if the Twelve-Month Period requirement is not met. The Cash Bonus will not be included in the Qualified Account's buying power until the end of the Twelve-Month Period. Losses due to trading or market fluctuations will not be taken into account.

tastytrade may decline requests to enroll in the Promotion at its discretion and reserves the right to change or terminate the Promotion at any time without notice. tastytrade is not responsible for any tax related to this offer, and recommends that each Qualified Customer consult its tax advisor about the appropriate tax treatment for this offer and any tax implications associated with receipt of the Cash Bonus.

**PARTICIPANT DATA AND PRIVACY:** Personal information collected in connection with this Promotion will be used in accordance with tastytrade's Privacy Policy.

**CONDITIONS OF ENTRY:** tastytrade is not responsible for incorrect or inaccurate transcription of entry information, or for any human or printing error in these rules or any promotional materials, technical malfunctions, lost/delayed data transmission, omission, interruption, deletion, defect, line failures of any telephone network, computer equipment, software, or any other error or malfunction, or any injury or damage to participant's or any other person's computer related to or resulting from participation in the Promotion. If, in tastytrade' opinion, there is any suspected or actual evidence of electronic or non-electronic tampering with any portion of this Promotion, or if any difficulties compromise the administration, security, fairness, integrity, or proper conduct of the Promotion, tastytrade reserves the right to amend, modify, cancel, or terminate this Promotion, in whole or in part, at any time without notice. In the event of war, national emergency, accident, dangerous weather conditions, fire, riot, strikes, lock-outs, industrial disputes, acts of terrorism, pandemic, or other matters beyond tastytrade's reasonable control, tastytrade has the right, in its sole discretion, to terminate the Promotion. Prompt notice of such action will be made to Qualified Customers. This Promotion offer is not transferable. tastytrade reserves the right to revoke, amend, modify, or extend this Promotion at any time without prior notice.

**Caution:** Any attempt by a participant or any other individual to deliberately undermine the legitimate operation of the Promotion may be a violation of criminal and civil laws and should such an attempt be made, tastytrade reserves the right to seek damages and/or other remedies from any such person to the fullest extent permitted by law. tastytrade reserves the right to disqualify participants for any reason at any time.

**DISPUTES:** This Promotion is conducted in English. By participating in the Promotion, Participants agree to release, discharge, indemnify and hold harmless tastytrade, its direct and indirect parent companies, subsidiaries, affiliates, advertising and promotion agencies, and all of their respective officers, directors, members, managers, partners, shareholders, employees and agents (collectively, "**Released Parties**") from any liability or damages which may arise out of participation in the Promotion. All applicable federal, state and local laws, rules and regulations apply. Released Parties are not responsible for incorrect or inaccurate transcription of referral information, or for any human or printing error in these Rules or any promotional materials, technical malfunctions, lost/delayed data transmission, omission, interruption, deletion, defect, line failures of any telephone network, computer equipment, software, or any other error or malfunction, or any injury or damage to you or any other person's computer related to or resulting from participation in the Promotion.

**DISPUTE RESOLUTION:** The arbitration procedures set forth in your tastytrade Customer Agreement, which are incorporated herein, governs the Promotion.

**GOVERNING LAW:** All issues and questions concerning the construction, validity, interpretation, and enforceability of these Rules, or the rights and obligations of you and tastytrade in connection with the Promotion, shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to any choice of law or conflict of law rules (whether of the State of Illinois, or any other jurisdiction), which would cause the application of the laws of any jurisdiction other than in the State of Illinois.

**MISCELLANEOUS** The invalidity or unenforceability of any provision of these Rules will not affect the validity or enforceability of any other provision. In the event that any provision of these Rules is determined to be invalid or otherwise unenforceable or illegal, the other provisions will remain in effect and will be construed in accordance with their terms as if the invalid or illegal provision were not contained herein. tastytrade's failure to enforce any term of these Rules will not constitute a waiver of that provision. You agree to waive any rights to claim ambiguity of these Rules. Headings are solely for convenience of reference and will not be deemed to affect in any manner the meaning or intent of the document or any provision hereof. In the event there is a discrepancy or inconsistency between disclosures or other statements contained in any Promotion materials, privacy policy, or terms of use on the tastytrade.com website, and/or the terms and conditions of the Promotional Rules, the Promotional Rules shall prevail, govern, and control, and the discrepancy will be resolved in tastytrade's sole and absolute discretion.

tastytrade, Inc. is a registered broker-dealer and member of FINRA, NFA, and SIPC

# EXHIBIT C2

## Tastytrade Bonus Advertisement on Website

**DESCRIPTION:**

The screenshot of the bonus page taken around end of 2023

**AUTHENTICITY:**

I certify that the attached screenshot is a true and correct copy of the bonus advertisement as it appeared on Defendant's website, captured from my web browser around the end of 2023.

Jaison Francisco, Plaintiff
August 30, 2025

info tastytrade com/tasty offer?utm_source-115&utm_medium organic_video&utm_campaign=tiered_2023

tastytrade

OPEN AN ACCOUNT



## The More You Fund, The More You Get.

Join tastytrade. Open and fund an account to get a cash bonus.

OPEN AN ACCOUNT

Terms and Conditions below.

| Bonus Amount | Funding Amount |
|---|---|
| $50 | For a deposit of $2,000 - $4,999[1] |
| $100 | For a deposit of $5,000 - $24,999 |
| $500 | For a deposit of $25,000 - $99,999 |
| $2,000 | For a deposit of $100,000 - $249,999 |
| $3,000 | For a deposit of $250,000 - $499,999 |
| $4,000 | For a deposit of $500,000 - $999,999 |
| $5,000 | For a deposit of $1,000,000+ |

# EXHIBIT C3

**Email Correspondence Between Plaintiff and Defendant's Customer Support**

**DESCRIPTION:**

Screenshot of email conversation between Plaintiff Jaison Francisco and Jerry, Defendant's customer support representative. Plaintiff inquired whether the promotional bonus would be available if he deposited funds. Jerry confirmed bonus availability upon deposit. The email does not reference any requirement to maintain $100,000 for twelve months.

**AUTHENTICITY:**

I certify that the attached screenshot is a true and correct copy of email correspondence between myself and Defendant's customer support representative Jerry, captured from my email account records.

Jaison Francisco, Plaintiff
August 30, 2025

$2K Bonus on Funding Account - $100k+ 2

jahskee/0-0C0a ...

Jaison Francisco
From: jahskee@yahoo.com
To: Tasty Trade

Wed, Aug 30, 2023 at 7:56 PM

Hi Tasty Support,

I am planning to fund my account with $100k+ fund is the bonus available to me if i move funds thru ACATS or ACH?

I wish to avail the bonus promo.

Thank you,
Jaison

tastytrade | Support tastytrade.com >
From: support@tastytrade.com
To: jahskee@yahoo.com

Thu, Aug 31, 2023 at 4:48 AM

Hi Jaison,

Thank you for reaching out - I am happy to help. Yes, you can fund your account through an ACAT or ACH to receive the $2,000.00 for the promotion code NEWBONUS23 for a deposit of $100,000.00 or more with either cash or securities. To add this promotional code to your current account, please press on the website link below from our help center on the tastytrade website for further information about on how to add a promotional code. After you have completed that, please respond to this email and we will confirm that the NEWBONUS23 code has been properly added to your account. Thank you for your assistance.

How to add a Referral or Promotional Code

If you are looking to transfer your account from another brokerage to tastytrade, please make sure that you have a like-account established at tastytrade. If you already have a like-account established, then please follow the links below for instructions on how you can transfer your account to tastytrade via ACAT.

Transfer an Account from Another Broker (ACATS)
Electronically Transfer Your Brokerage Account (Plaid ACAT)
ACATS Form Instructions

Please let us know if you have any further questions or concerns. Thank you for choosing tastytrade for your trading. Have a nice day!

Best,

Jerry

**EXHIBIT C4**

**Plaintiff's Bonus Follow Up**

September 22, 2023

**DESCRIPTION:**

Email communication from Plaintiff Jaison Francisco to Defendant Tastytrade, Inc. on September 22, 2023, regarding the status of the $2,000 promotional bonus.

**AUTHENTICITY:**

I certify that the above is a true and correct copy of the email communication I sent to Defendant on September 22, 2023.

Jaison Francisco, Plaintiff

August 30, 2025

← Back   Archive   Move   Delete   Spam   •••

**Promo $2000**

**Jaison Francisco**
From: jahskee@yahoo.com
To: Tasty Trade

Fri, Sep 22, 2023 at 3:15 PM

Hi Support,

Just wanted to follow up, I was told I will be given $2000 promo.
When is it going to be added?

Thank you,
Jaison

Reply, Reply All or Forward

# EXHIBIT C6

**Kevin Labno's Declaration - Bonus Not Available**
(Excerpt from Exhibit C5)

**DESCRIPTION:**

Page 2 contains screenshot of Paragraph 18 of Kevin Labno's Declaration, stating that the promotional bonus is not available to Plaintiff. The complete Declaration (Exhibit C5) will be offered upon request or at trial.

**AUTHENTICITY:**

I certify that the attached declaration is a true and correct copy of the statement provided by Kevin Labno regarding the promotional bonus availability and terms communicated to me on February 20, 2024.

Jaison Francisco, Plaintiff
August 30, 2025

18. Attached as Exhibit 9 is a true and correct copy of the Terms and Conditions for the New Account Opening Promotion offered to customers who opened a new securities account



with tastytrade in 2023, which was provided to Jaison Francisco before he opened his securities account. This New Account Opening Promotion was not available to customers who opened a futures trading account.

# EXHIBIT D1

IceDrive.net Source Video Evidenc with Timestamp

**DESCRIPTION:**

Foundation exhibit showing the IceDrive.net interface with the preserved video file "screenshot1.mp4" (3.4 MB), uploaded September 26, 2023 at 23:25:51, immediately after recording the false –$696,134.32 balance and failed market sell order. A copy is available at https://youtu.be/qp54YCb4Vc4. The file is preserved with MD5 hash f9c6a1996ebce52a27943462bb5cdd2a, underlies Exhibits D2 and D3, and will also be produced on a flash drive at trial. The timestamp confirms contemporaneous preservation, ensuring integrity and availability for forensic verification.

**IceDrive - My Icedrive**

**screenshot1.mp4** 3.4 MB **26 Sep 2023 23:25:51** ←

**AUTHENTICITY:**

I declare under penalty of perjury under the laws of the United States of America that this screenshot accurately depicts the IceDrive.net interface showing the original video file and its upload timestamp. Executed on August 31, 2025.

Jaison Francisco, Plaintiff
August 30, 2025

Icedrive

icedrive portable

- My Icedrive
- Encrypted
- Shared with me
- Favorites
- Trash
- Transfers 0
- Watched 0
- Settings

jahskee@yahoo.com

84% of 5.00 TB

My Icedrive

Order by: Name

| Name | | Size | Date |
|---|---|---|---|
| 00-Complaints | | | 25 Aug 2025 14:35:22 |
| 00-MyProfile | | | 25 Apr 2023 16:09:45 |
| 00-Sealed | | | 09 Oct 2024 21:08:58 |
| 00-Unsealed | | | 14 Oct 2024 12:25:15 |
| A-WebSites | | | 10 Mar 2023 14:48:45 |
| All | | | 01 Feb 2023 15:24:43 |
| Amazon | | | 19 Apr 2025 17:34:03 |
| Greetings | | | 08 Nov 2024 05:26:39 |
| Jaison-Resume | | | 24 Dec 2023 09:51:06 |
| Mac-ColorSync | | | 27 Apr 2025 08:07:03 |
| medium-stripe | | | 24 May 2025 08:11:16 |
| dental-438.40-receipt.png | | 289.2 KB | 06 Oct 2024 08:54:49 |
| screenshot1.mp4 | | 3.4 MB | 26 Sep 2023 23:25:51 |

# EXHIBIT D2

**False Debt -$696,134.32 Screenshot from Video Evidence**

September 26, 2023

**DESCRIPTION:**

Screenshot taken at 8 seconds from video recording (https://youtu.be/qp54YCb4Vc4) showing the Tastytrade trading platform displaying false debt of -$696,134.32 in the "P/L YTD w/f" field located in the top right corner of the interface during the account freeze incident.

**AUTHENTICITY:**

I certify that the attached screenshot is a true and correct capture from video evidence I recorded on September 26, 2023.

Jaison Francisco, Plaintiff
August 30, 2025

EXHIBIT D2: Page 2



EXHIBIT D2: Page 3



# EXHIBIT D3

**Screenshot: Market Sell Order - Not Executed**

September 26, 2023

**DESCRIPTION:**

Screenshot at 14 seconds from video recording (https://youtu.be/qp54YCb4Vc4) showing the Tastytrade trading platform interface on September 26, 2023. The screenshot displays a popup confirmation dialog box containing the following text: "By choosing to FLATTEN this symbol, you will CANCEL all working orders for this symbol and place a MARKET order to close the existing position. --- Are you sure you want to do this?" The dialog box shows "Yes" and "No" selection options. The video recording shows the selection of "Yes."

**AUTHENTICITY:**

I certify that the attached screenshot is a true and correct capture from video evidence I recorded on September 26, 2023.

Jaison Francisco, Plaintiff
August 30, 2025


By choosing to FLATTEN this symbol, you will CANCEL all working orders

By choosing to FLATTEN this symbol, you will CANCEL all working orders