**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
*www.cftc.gov*

Office of Proceedings

**RECEIVED CFTC**
Office of Proceedings
Proceedings Clerk
***12:00 pm, Dec 06, 2024***

| | | |
|---|---|---|
| Jaison Francisco,<br>Complainant,<br>v.<br>tastytrade, Inc.,<br>Respondent. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CFTC Docket No. 24-R001<br>**Served electronically** |

# Initial Decision
# Dismissing Complaint
# On Summary Disposition

Jaison Francisco brought his Complaint on October 12, 2023, alleging that tastytrade, Inc. (an Introducing Broker (IB)) committed the following misconduct:[1] (1) failed to disclose that his account was traded on leverage; (2) inappropriately advised him; (3) prevented him from making trades in his account at key periods or showed misleading displays; (4) traded against him; and (5) failed to provide him the promised $2,000 promotional bonus. However, the documents produced in this case contradict Francisco's claims and foreclose his ability to prevail. tastytrade brought a counterclaim for fraud against Francisco. That counterclaim fails because it is vague and ambiguous with respect to the actual losses tastytrade

[1] Because tastytrade does not capitalize its name, I have left it lowercase throughout this Initial Decision, even where it is grammatically incorrect to do so.

suffered. Therefore, both sets of claims fail and this case is dismissed with prejudice.

## I. History of Proceedings

1. Francisco initially filed his Complaint on October 12, 2023, electing to file it as a Formal proceeding.

2. On October 25, 2023, Francisco amended his Complaint and moving to change the proceeding from Formal to Voluntary.

3. Francisco amended his Complaint at least five more times from then through January 6, 2024.

4. The Amended Complaint filed on January 6, 2024, is the operative complaint in this case (Sixth Am. Compl.).

5. tastytrade filed its Combined Answer To Complainant's Complaint And Motion For Reconsideration (Answer) on February 20, 2024.

6. The Answer contained a request not to forward the Complaint, and put forward a counterclaim for the debt balance in Francisco's trading account—although tastytrade has yet to identify the amount Francisco owes. *See* Answer at 14-15 (Feb. 20, 2024); and Combined Opposition To Motion For Summary Disposition and Cross-Motion For Summary Disposition at 15-16.

7. On March 12, 2024, the Director of the Office of Proceedings sent the parties a letter denying tastytrade's Motion For Reconsideration To Forward The Complaint, "because the criteria for forwarding the complaint and for initiating a reparations proceeding [had] been met."

8. On March 12, 2024, this Office sent Francisco a letter informing him that he had 30 days, by March 22, 2024, to respond to tastytrade's counterclaim.

9. Francisco filed his response to tastytrade's counterclaim on March 15, 2024, stating in part that the account opening documents were altered with respect to his risk profile and sophistication. *See* Complainant's Answer To: Tasty Trade Respondent Counterclaims at 1-2 (March, 15, 2024) (Complainant's Answer To Counterclaim). tastytrade disputed any such forgery took place in a pleading dated March 22, 2024.

10. On April 2, 2024, this case was forwarded to my docket, and discovery commenced shortly after. *See* Initial Scheduling Order (Apr. 4, 2024).

11. During discovery, the parties filed several motions that I resolved in an Omnibus Order. First, I elevated this case from a Voluntary to a Formal proceeding at Francisco's request. *See* Omnibus Order at 1-2 (May 23, 2024). Second, I denied Francisco's Motion To Add Punitive Damages, and Motion To Amend Damages Calculation. *Id.* at 2-3. Third, I set a briefing schedule for Francisco's Motion for Summary Disposition; and denied tastytrade's Motion to Strike Francisco's Motion for Summary Disposition. *Id.* at 3-4. Fourth, I ordered Francisco to refrain from submitting duplicative and numerous motions and discovery requests. *Id.* at 4. Finally, I stayed the case pending my decision on Francisco's Motion For Summary Disposition. *Id.*

12. Along with my Omnibus Order, the parties were sent a Notice of Virtual Hearings, and a Notice of Formal Proceeding. *See* Email From OP to Parties (May 23, 2024); and Appendices A and B (attached to May 23 email)

13. On June 3, 2024, Francisco filed a Motion For Reconsideration Regarding Punitive Damages, and a Motion For Leave To Submit Additional Evidences For Summary Disposition along with six exhibits—in direct violation of my Omnibus Order.

14. On June 5, 2024, tastytrade filed its objection to Francisco's June 3 submissions.

15. By way of email, I denied Francisco's June 3 submissions, and ordered Francisco, a second time, to cease filling further submissions until his reply in support of his Motion For Summary Disposition was due. *See* Email From OP to Parties (June 6, 2024).

16. tastytrade filed its Combined Opposition To Motion For Summary Disposition and Cross-Motion For Summary Disposition (Cross-Motion For Summary Disposition), with exhibits, on June 7, 2024.

17. Francisco filed his Response To Support Summary Disposition and accompanying exhibits on June 21, 2024.

18. The parties' Motion For Summary Disposition and Cross-Motion For Summary Disposition have been fully briefed and are ready for disposition.

## II. Findings of Fact

1. Complainant Jason Francisco, a resident of Alexandria, Virginia, opened an account with tastytrade on or about September 2023.

2. Respondent tastytrade, Inc. is a CFTC-registered Introducing Broker (IB) and has been since August 2016. *See* NFA Basic Research at https://www.nfa.futures.org/BasicNet/basic-profile.aspx?nfaid=bCH9hzukEPU%3D .

3. Francisco signed Customer Agreement & Acknowledgements on August 6, 2023, which among other disclosures contained lengthy disclosures about trading on margin. Labno Decl. ¶ 16, Ex. 7 (Customer Agreement at 8-9, 13).

4. On August 11, 2023, Francisco also signed a Futures Customer Agreement & Acknowledgments, which disclosed the risks of Futures Trading generally, the risk of incurring negative balances specifically, and the risks and rules for trading on margin. Labno Decl. ¶ 15, Ex. 6 (Futures Customer Agreement at 2-3, 13).

5. That same day, Francisco signed Futures & Exchange-Traded Options Risk Disclosure Statement, which stated on the first page that

> Transactions in futures carry a high degree of risk. The amount of initial margin is small relative to the value of the futures contract so that transactions are 'leveraged' or 'geared.' A relatively small market movement will have a proportionately larger impact on the funds you have deposited or will have to deposit: this may work against you as well as for you. You may sustain a total loss of initial margin funds and any additional funds deposited with the firm to maintain your position. If the market moves against your position or margin levels are increased, you may be called upon to pay substantial additional funds on short notice to maintain your position. If you fail to comply with a request for additional funds within the time prescribed, your position may be liquidated at a loss and you will be liable for any resulting deficit.

Labno Decl. ¶ 17, Ex. 8 (Risk Disclosure Statement at 1).

6. That Risk Disclosure Statement further warned that "Trading on an electronic trading system may differ not only from trading in an open-outcry market

but also from trading on other electronic trading systems. If you undertake transactions on an electronic trading system, you will be exposed to risk associated with the system, including the failure of hardware and software. The result of any system failure may be that your order is either not executed according to your instructions or is not executed at all." *Id.* at 2. These warnings were reiterated throughout the document. *See, e.g., id.* at 4.

7. When Francisco opened his accounts, he chose the following options for his Account Profile. *See* Labno Decl. ¶ 14, Ex. 5 (Account Opening Documents):

a. His investment objective was "Speculation: Taking larger risks, usually by frequent trading, with hope of higher than-average gain."

b. He represented that his Futures Knowledge was "extensive."

c. He represented that he was opening a Futures Account for "speculative" purposes.

8. In opening his Futures Account, Francisco chose to open "Individual Margin" accounts, which meant he could trade on leverage. Labno Decl., Ex. 1 (Futures Account Opening Screenshot).

9. Francisco in this litigation disavowed his representations on his account opening documents as to his objectives and sophistication. Compl. Ans. To Counterclaim at 1-2 (Mar. 15, 2024). He instead avers that tastytrade filled those boxes out for him. This disavowal is disingenuous at best. First, Francisco proffers no evidence that tastytrade changed the account opening documents (such as the account opening documents from his own files). Second, his disavowals are flimsy

and non-sequitur. For example, he states he did not choose "speculation" in his investment objectives and offers his disinterest in trading at 1:4 leverage as evidence. But retail trading in these markets is inherently speculative and the amount of leverage or non-leverage does nothing to shed light here, in these circumstances, on his investment objectives. In other words, there is no credible evidence doubting the veracity or authenticity of the account opening documents produced.

10. Francisco deposited $138,100 with tastytrade on September 11, 2023.

11. He emailed tastytrade on September 15, 2023, informing it that he did not wish to trade with 1:4 leverage. Sixth Am. Compl. at 3.

12. He reiterated this request on September 17, 2023, when he stated he just wanted to trade on "default margin" and not using 1:4 leverage. Compl. Ex. 8 (Francsico Email to tastytrade support (Sept. 17, 2023)).

13. He withdrew all of his funds on October 2, 2023. The total withdrawn was $50,259.16. That represented $87,837 in investment losses. Sixth Am. Compl. at 1.

## III. Legal Discussion

Pursuant to the statute, reparations complainants must prove a violation of the CEA or any rule, regulation or order issued pursuant to the CEA that "proximately caused" the complainants' losses. CEA § 14(a)(1), 7 U.S.C. § 18(a)(1). Further, complainants must prove that violation by a preponderance of the

evidence. *Webster v. Refco, et al.,* CFTC Dkt. Nos. 98-R005, R009, R010, R075, 1999 WL 41818, at *16 n.303 (CFTC Feb. 1, 1999).

The question of whether the complainant has, or can, meet this burden can in some instances be resolved by summary disposition. Under Commission Rule 12.310(e), summary disposition is warranted when each of three conditions has been met: (1) there is no genuine issue of material fact; (2) there is no need for further factual development; and (3) the moving party is entitled to a decision as a matter of law. *Elliot v. Jay De Bradley et al.*, CFTC No. 11-R004, 2012 WL 6087468 at *6 (CFTC Dec. 5, 2012); *Levi-Zeligman v. Merrill Lynch Futures, Inc.*, CFTC No. 92-R125, 1994 WL 506234 at *6 (CFTC Sept. 15, 1994). The purpose of summary disposition "is to avoid the empty ritual of an oral hearing," *Elliot*, 2012 WL 6087468 at *6 (internal citation omitted), and at this stage:

> [T]he judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. All reasonable doubts about the facts should be resolved in favor of the non-moving party. If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied.

*Id.* And in reviewing the record for summary disposition, "the judge must carefully review the record in an effort to separate appearance from reality. The issue is not what could have happened, rather it is what the preponderance of the evidence shows most likely did happen." *See Briscoe, III v. CA-IN Industries, Ltd.*, CFTC Dkt. No. 00-R070, 2001 WL 15907, *1 n.3 (CFTC Jan. 4, 2001) (internal quotation marks and citation omitted).

Reviewing the record under these guiding principles, Francisco has not and cannot show a violation of the CEA or its regulations by a preponderance of the evidence. Francisco's Motion for Summary Disposition is thus DENIED, and tastytrade's Motion is GRANTED.

A. <u>tastytrade did not mislead Francisco with regard to using leverage in his account.</u>

Reading Francisco's allegations as broadly as possible, he claims alternately that he authorized neither the use of any leverage in his account, Am. Compl. at 2 (Jan. 6, 2024), nor the use of multiplying his margin times four with respect to leverage (1:4 leverage), Am. Compl. at 7. But these allegations are either unsupported or contradicted by the record.

The first allegation—that he did not consent to the use of margin or leverage at all—is contradicted by his own Complaint and the record. First, in his allegation regarding tastytrade giving him risky advice, Francisco states that he believed he was on 1:2 leverage. Sixth Am. Compl. at 3. Plainly that forecloses any assertion that he believed he was not leveraged at all. Second, Francisco's own email exchanges make clear he knew he was trading on leverage. *See* Compl. Ex. 8 (Email from Francisco to tastytrade support (Sept. 17, 2023)) ("please do not enable intraday futures margin anymore. . . I just want to keep the default margin."); Compl. Ex. 10 (Email from Francisco to tasytrade support (Sept. 28, 2023)) (noting he expected his leverage to be only 50%). Third, the account opening documents contain several disclosures regarding trading on margin or using leverage. *See, e.g.*, Labno Decl. Ex. 8 (Risk Disclosure Statement at 1); Labno Decl. Ex. 6 (Futures

Customer Agreement & Acknowledgements at 2, 4, 12). And finally, Francisco himself opened his account as a margin account. Labno Decl. ¶ 10 & Ex. 1. That Francisco may have been confused about his leverage should not be mistaken for tastytrade misleading him with respect to leverage.

As to the use of 1:4 leverage, there is no evidence in the record that he ever traded with that amount of leverage, and in fact Francisco admitted in his responses to tastytrade's Request for Admissions that he never traded with 1:4 leverage. Compl. Resp. to Request for Admissions at 2 (May 14, 2024). Because Francisco never traded with 1:4 leverage, he did not incur any losses related to it. And if Franciso did not have any losses stemming from the use of 1:4 leverage, he does not have a claim here since the statute requires proof of **actual damages** proximately caused by a violation of the Commodity Exchange Act. 7 U.S.C. § 18(a).

Thus even though tastytrade offered unsolicited 1:4 leverage to Francisco, despite his plain wishes not to trade on that much leverage, there were no damages resulting from this conduct and thus no claim here.

B. tastytrade did not provide Francisco risky advice.

Francisco avers that tastytrade gave him "risky advise *[sic]* without mentioning the high leveraged risk in futures trading." Am. Compl. at 3. The record makes clear this is untrue. As explained above, tastytrade plainly disclosed the risks of leveraged trading. In addition, the email exchange Francisco uses to illustrate his point itself contains no "advice" regarding leverage. The relevant email was sent by Franscisco on September 15, 2023, and states that he "expect[s his] position will be preserved" and that he is "not going to trade 4x leverage

intraday margin for now." tastytrade support replies, "You currently have sufficient funds to hold all 10 /CL contracts overnight should you choose to do so. You do not have to use the intraday margin if you don't want to. That simply gives you 4x leverage during the day session . . . should you choose to use it." Am. Compl. at 3 (inserting email exchange).

There is nothing in that email giving Francsico trading advice—it is simply letting him know that he had sufficient funds to hold his positions if he chose to do so, and that if he wanted to use intraday margin it would give him 1:4 leverage. Since there is no advice in this email, there is nothing to evaluate for its riskiness or lack thereof.

C. Francisco has not demonstrated that transactional failures were caused by tastytrade's conduct.

Francisco alleges that tasytrade prohibited him from executing his transactions. But he provides no evidence of this failure other than after-the-fact video recreations of what he believes happened (which are not credible or persuasive pieces of evidence.) *See* Am. Compl. at 4 (noting he tried to "simulate" his claims). And even Francisco's own demonstratives make it more likely than not that the fault was his and not tastytrade's.

For example, Francisco pastes a YouTube link as Video Evidence 1.1 showing his inability to execute a trade. Am. Compl. at 4 (https://www.youtube.com/watch?v=iPrqd4hpy2E). But that video makes clear that the trade could not be executed because he received a pop-up notification that "limit orders require a price," which meant that he either never entered a price or entered a price that ran contrary to

the exchange's trading rules with regard to limit orders. The fault for this lies on Francisco, not then with the exchange or tastytrade. By way of further example, Francisco points to a second video that elicited a network issue error message. *See* Am. Compl. at 4 (citing https://www.youtube.com/watch?v=G6FQfX6lTRg). There is simply no evidence that this network lag was caused by tastytrade for the purpose of disallowing Francisco's trades, and tastytrade introduced evidence that the IP address from which Francisco was trading had connectivity issues. Labno Decl. ¶ 21.[2]

Finally, introducing brokers are not directly involved in trade execution, which are delegated to futures commission merchants. *See* Commission Rule 1.57(a)(2)(i), 17 C.F.R. § 1.57(a)(2)(i). Given this and the entirety of the record, Francisco cannot prove by a preponderance of the evidence that tastytrade adversely interfered with his ability to execute his trades.

D. Francisco has not demonstrated that tastytrade traded against his positions.

Francisco also claims tastytrade traded against his positions. This claim fails because it is structurally improbable and requires at least some evidence tending to demonstrate its truth. Francisco has not provided any such evidence.

[2] There is evidence in the record that Francisco's account showed a large (but wholly inaccurate) negative balance in his account. Francisco claims alternately that either showing this was so emotionally distressing that it is actionable or signifies tastytrade was applying leverage to his account. The first claim is presumably a tort claim and not a claim under the Commodity Exchange Act or its regulations, so is not actionable here. As to the second claim, Francisco conceded that tastytrade never applied a 1:4 leverage to his account.

tastytrade is an Introducing Broker, which means it cannot "carry proprietary accounts." Commission Rule 1.57(b); 17 C.F.R. § 1.57(b). This prohibition makes it unlikely that tastytrade has an account with which it could secretly trade against Francisco. Unlikely does not mean impossible, but none of Francisco's "evidence" regarding pricing in any way suggests that tastytrade was acting as a counterparty to his trades. Francisco has submitted no evidence that tastytrade was trading against him, and he cannot sustain his burden of proof with respect to this claim.

E. Francisco has not demonstrated that tastytrade mislead him regarding a $2,000 promotional bonus.

Francisco avers that he was never provided the $2,000 bonus he was promised, but then admits he was given it but prohibited from withdrawing it. Sixth Am. Compl. at 6. tastytrade provided evidence that the $2,000 bonus was conditioned on maintaining a securities account for at least twelve months and that this condition was set forth in a document Francisco received. Labno Decl. ¶ 18 & Ex. 9. And in fact the screenshot provided as evidence contains a link to the "Terms and Conditions" that Francisco did not include in his evidence. See Francisco Ex. 5 (Screenshot of Promotions). But Francisco maintained his futures account for roughly two months. It appears Francisco breached the terms and conditions. But I need not decide he did, nor do I need to decide whether he was made aware of these terms, because this is a breach of contract claim that cannot be adjudicated here without some violation of the CEA and its regulations. *Emily v. Gleichmann, et al.,* CFTC Dkt. No. 14-R007. 2020 WL 3248253, at *2 (CFTC Jun. 9, 2020). Because

there is no violation of the CEA or its regulations, the breach of contract claim is outside the scope of this Office's jurisdiction.

F. tastytrade has not met its burden of proof with regard to its counterclaim.

tastytrade avers that by lying on his account application, Francisco committed fraud pursuant to Commission Rule 180.1(2). However, Francisco is not a registered person and therefore this Office does not have jurisdiction to hear CEA claims against him in this forum. See 7 U.S.C. § 18(a)(1); CEA § 14(a)(1) (allowing petitions for damages against "any person who is registered."). Moreover, tastytrade has not specifically plead any actual damages. Rather, it refers to "losses that Complainant has refused to pay for," other "monetary losses," and "other harm" it has purportedly suffered "as a direct result of Complainant's false and misleading statements." These allegations are plainly too vague to support tastytrade's motion for summary disposition—and even to survive a motion to dismiss. This counterclaim is therefore denied.

## Conclusion

It is clear that Francisco feels aggrieved. He argues that tastytrade's "mix up of stocks, futures and options in the same account confused [him]." But the fact that Francisco may have been confused does not mean tastytrade intentionally and illegally confused him. And indeed, tastytrade's disclosures and email communications contradict Francisco's claims that it was purposely misleading him.

For the reasons outlined above, Francisco's Motion for Summary Disposition is DENIED. tastytrade's Motion for Summary Disposition is GRANTED with

respect to the complaint and DENIED with respect to its counterclaim. Francisco's Complaint and tasytrade's counterclaim are dismissed with prejudice.

**Dated:** December 6, 2024

/s/ Kavita Kumar Puri
Kavita Kumar Puri
Administrative Judge